LINES *v.* FREDERICK ET AL.

No. 412.   Decided November 9, 1970

PER CURIAM.

This case presents the question of whether a bankrupt wage earner's vacation pay, accrued but unpaid at the time of the filing of his petition, passes to the trustee in bankruptcy as "property" under § 70a (5) of the Bankruptcy Act, 30 Stat. 565, as amended, 11 U. S. C. § 110 (a)(5).   The facts are not in dispute.   Respondent Frederick, employed by a large manufacturing company, had accrued vacation pay of $137.28 at the time he filed his petition.   He could collect this sum either during the annual period when his employer shut down the plant in which he worked, or on final termination of his employment.   Respondent Harris had accrued vacation pay of $144.14, which he could draw either on termination or under a conventional voluntary vacation plan of his employer.   In each case, the referee in bankruptcy made a "turnover order" requiring the bankrupt to pay to the trustee on receipt all of his accrued vacation pay, less one-half of that part accrued during the 30 days prior to the filing of the petition (the deducted sum being exempt under Cal. Code Civ. Proc. § 690.11 (Supp. 1970)).

The District Court affirmed the referee in both cases, but the Court of Appeals for the Ninth Circuit reversed, holding that accrued but unpaid vacation pay is not "property" under the statute, and therefore finding it

unnecessary to decide whether such accrued pay meets the further statutory requirement of being "transferable." As the Court of Appeals noted, its decision was squarely in conflict with that of the Court of Appeals for the Fifth Circuit in *Kolb* v. *Berlin,* 356 F. 2d 269.

In *Segal* v. *Rochelle,* 382 U. S. 375, 379, we said that "[t]he main thrust of § 70a (5) is to secure for creditors everything of value the bankrupt may possess in alienable or leviable form when he files his petition. To this end the term 'property' has been construed most generously and an interest is not outside its reach because it is novel or contingent or because enjoyment must be postponed." But we pointed out that " '[i]t is impossible to give any categorical definition to the word "property," nor can we attach to it in certain relations the limitations which would be attached to it in others.' "

The most important consideration limiting the breadth of the definition of "property" lies in the basic purpose of the Bankruptcy Act to give the debtor a "new opportunity in life and a clear field for future effort, unhampered by the pressure and discouragement of preexisting debt. The various provisions of the bankruptcy act were adopted in the light of that view and are to be construed when reasonably possible in harmony with it so as to effectuate the general purpose and policy of the act." *Local Loan Co.* v. *Hunt,* 292 U. S. 234, 244–245 (citations omitted).

In *Segal* v. *Rochelle, supra,* the question was whether loss-carryback tax refunds arising out of business losses immediately prior to bankruptcy but not collected until the end of the calendar year were property subject to a turnover order in favor of the trustee. In that case, as in this one, the problem of classification for purposes of the Bankruptcy Act could not be resolved simply by reference to the time when the right to the payment "vested," or to definitions of property drawn from other

areas of the law. The Court looked to the purposes of the Act and concluded that the tax refund claim was "sufficiently rooted in the pre-bankruptcy past and so little entangled with the bankrupt's ability to make an unencumbered fresh start that it should be regarded as 'property' under § 70a (5)." 382 U. S., at 380.

Applied to the set of facts before us here, the principles reflected in the earlier cases compel a decision for the bankrupt. In *Segal*, a business had ceased to operate and the task of the trustees in bankruptcy was to marshal whatever assets were left for distribution to the creditors. The tax refund claim, arising out of the operations of the business and specifically out of the losses that had precipitated its failure, was such an asset. By contrast, the respondents here are wage earners whose sole source of income, before and after bankruptcy, is their weekly earnings. The function of their accrued vacation pay is to support the basic requirements of life for them and their families during brief vacation periods or in the event of layoff. Since it is a part of their wages, the vacation pay is "a specialized type of property presenting distinct problems in our economic system." *Sniadach* v. *Family Finance Corp.*, 395 U. S. 337, 340. Where the minimal requirements for the economic survival of the debtor are at stake, legislatures have recognized that protection that might be unnecessary or unwise for other kinds of property may be required. See, *e. g.*, the Consumer Credit Protection Act, § 301, 82 Stat. 163. 15 U. S. C. § 1671 (1964 ed., Supp. V).

The wage-earning bankrupt who must take a vacation without pay or forgo a vacation altogether cannot be said to have achieved the "new opportunity in life and [the] clear field for future effort, unhampered by the pressure and discouragement of preexisting debt," *Local Loan Co,* v. *Hunt, supra,* which it was the purpose of the statute to provide.

The motion of respondent Harris to proceed *in forma pauperis* is granted. The motion of respondent Frederick to dispense with printing his brief in opposition is granted. The petition for certiorari is granted and the judgment is affirmed.

THE CHIEF JUSTICE is of the opinion that the petition for writ of certiorari should be denied.

MR. JUSTICE HARLAN, dissenting.

In my view this case is another instance in which the pressure of an overcrowded docket has led the Court to deal summarily with an issue which, if deserving of our attention at all, is deserving of full-dress treatment. Cf. *United States* v. *Maryland Savings-Share Insurance Corp., ante,* p. 4; *United States* v. *Chicago, ante,* p. 8. Moreover, the Court disposes of the case despite the opaqueness of the record and the uncertainty with regard to relevant California law.

Under the terms of respondent Frederick's employment, his employer credited him with one day's vacation pay for each month's work.[1] From September 15, the date of bankruptcy, to December 23, the beginning of the shutdown and the enforced "vacation," Mr. Frederick presumably became entitled to a little over three days' pay. The same amount would have accrued to a person starting work on the date of bankruptcy with no debts or assets, the paradigm of "an unencumbered fresh start." Indeed, the order not only permitted Mr. Frederick a *fresh* start; it gave him a *head* start, to the extent

---

[1] While neither the stipulated facts nor the opinions below reveal the rate of accrual of vacation pay, I take as true the uncontested representation in Mr. Frederick's petition for review of the referee's order.

of half a day's pay.[2]  *Segal* v. *Rochelle,* 382 U. S. 375 (1966), and *Local Loan Co.* v. *Hunt,* 292 U. S. 234 (1934), therefore tend to support the position of the trustee rather than "compel a decision for the bankrupt."  *Ante,* p. 20.  However, respondents can muster forceful arguments in their support, even on the assumption that the accrued vacation pay was subject to the claims of creditors—a point of California law which the court below found it unnecessary to decide.

Since the question tendered for review is close and has split the courts of appeals, I would set the case for argument.

---

[2] The case of respondent Harris is similar, but it is complicated by the fact that he could have chosen to forgo his vacation. As he observed in his petition to review the turnover order, the record is silent on whether such a choice would have wiped out his accrued vacation time and left nothing for him to turn over.