**In the Matter of Michael W. CEDOR, Bankrupt.**

**In re Clyde R. JAMES, Bankrupt.**
**Nos. 2–70 287, 3–70 1064.**

United States District Court,
N. D. California.
Jan. 20, 1972.

Harvey Hoffman, Jr., San Francisco, Cal., for trustee.

Legal Aid Society of San Mateo County, Daly City, Cal., John T. Hansen, San Francisco, Cal., for bankrupts.

## OPINION AND ORDER ON REVIEW

WOLLENBERG, District Judge.

These two cases were consolidated for purposes of argument; both present the same issues involved in the administration of estates of bankrupts who were wage-earners prior to filing. In each case, the bankrupt's wages were subject to withholding for federal income tax. In each case, the bankrupt's employer withheld from his earnings the amount required by the statement filed by the bankrupt under the provisions of the Internal Revenue Code, 26 U.S.C. §§ 3401–3402. In each case, the tax return filed by the bankrupt showed a tax liability owing in an amount less than the amount actually withheld, so that a refund was due and eventually was paid to the bankrupt after the date his petition was filed. The trustee in each case asserted his claim to that portion of the refund attributable to earnings preceding the date of filing, and that amount is now held by the trustee. Each bankrupt moved to recover at least a portion of that sum, and it is from the denial of the motion by the referee that these petitions for review are brought. One difference between the two cases is that in *Cedor* the motion was for return of seventy-five percent of the sum turned over to the trustee, and the argument to the referee in effect conceded that the remaining twenty-five percent was properly an asset of the estate, while in *James* the contention was that the bankrupt should recover the total amount of the tax refund. It was in his brief on review in this court that the bankrupt in *Cedor* claimed the total amount for the first time.

The bankrupt in each case bases his claim on two theories. First it is urged that the rationale of Lines v. Fredrick, 400 U.S. 18, 91 S.Ct. 113, 27 L.Ed.2d 124 (1970), requires that the amount of the tax refunds in these cases be construed not to be "property" within the meaning of § 70(a) (5) of the Act, 11 U.S.C. § 110(a) (5), with the result that title would not pass to the trustee. As an alternative rationale, the bankrupts argue that taking title to the refund in these cases constitutes a "garnishment" by the trustee, as that term is defined in the Consumer Credit Protection Act, 15 U.S.C. §§ 1671–1677. As such, the trustee would be entitled, it is argued, to no more than twenty-five percent of the portion of the refund attributable to pre-filing earnings. Both issues require careful consideration.

The decision of the Supreme Court in *Lines* v. *Fredrick* turned upon a careful

consideration of the nature of the fund to which the trustee was asserting title, with a view to determining how closely the fund was linked, on the one hand, with the pre-bankruptcy past, and to what extent it was tied to the bankrupt's ability in fact to make the fresh, unencumbered start envisioned by the Bankruptcy Act. In that case the Court was dealing with vacation pay which was accrued but unpaid at the time of filing. There was no means by which the bankrupt could reach the fund prior to the taking of his annual leave or the termination of his employment. Similarly, there is no means by which the wage-earner can recover any portion of moneys withheld on account of the federal income tax prior to the filing of his tax return. The Court concluded in *Lines* that it would be an undue burden to require the bankrupt to either forego his annual vacation period or to force him to take the vacation without pay. This conclusion was supported by a reference to Sniadach v. Family Finance Co., 395 U.S. 337, 89 S.Ct. 1820, 23 L. Ed.2d 349 (1969), which recognized wages as "a specialized type of property presenting distinct problems in our economic system". 395 U.S. 340, 89 S.Ct. 1882. That reasoning led the Court in *Lines* to distinguish vacation pay from the refund generated by the "loss-carry-back" provisions of the Internal Revenue Code relating to taxation of business income which the Court had earlier held to be "property" in Segal v. Rochelle, 382 U.S. 375, 86 S.Ct. 511, 15 L.Ed.2d 428 (1966); as "property", the refund was subject to the provisions of § 70(a), passing title to the trustee.

Here the Court is confronted with elements of both *Segal* and *Lines*. The funds are received as a tax refund, but the refund is generated by the provisions of the Internal Revenue Code requiring certain amounts to be withheld from wages under given circumstances. In *Segal* the refund amounted to the recovery of a part of the taxes paid on profits in earlier years because of losses in the operation of a business in the tax-

able year; those losses also were a precipitating cause of the bankruptcy. In the instant cases, the Court is concerned with the refund of what was, in effect, a *forced* overpayment of tax *on wages*. There is nothing to suggest that the sums refunded were related to the circumstances which precipitated the bankruptcy. The Supreme Court considered the question in *Segal* to be "close", 382 U.S. 379, 86 S.Ct. 511, 15 L.Ed.2d 428; in light of *Lines* and *Snaidach,* the balance on this question tips in favor of the bankrupt. The collection by the Internal Revenue Service without the consent or control of the bankrupt, and the belated refund, render these funds quite similar in a practical sense, to the accrued but unpaid wages which constituted vacation pay. If *Lines* stands for anything, it is that the practical realities are controlling in this determination. While the amount of refund is not so easy to calculate as the amount of vacation pay, it may generally be said to be an amount that, by reason of past experience, is anticipated by the wage-earner as an annual event. To deprive the wage-earner of that planned-on annually recurring payment, cannot be said to be less severe than the deprivation of two weeks of paid vacation, in terms of a fresh start. The Court concludes therefore, that insofar as the tax refund to a bankrupt is attributable to an excess of the *minimum* amount required by law to be withheld from the bankrupt's wages over the amount of the bankrupt's actual tax liability, the refund is not property within the meaning of § 70(a) (5) of the Act.

But a significant distinction between accrued but unpaid vacation pay, and the refunds considered in at least one of these cases appears from the record. In the *James* case, the bankrupt authorized withholding in an amount greater than the minimum required by the Internal Revenue Code. Summary of Record Below and Stipulation Thereto. The flexibility of the withholding provisions, no doubt, serves many salutary purposes, primarily as a means of assuring that

enough will in fact be withheld to meet the tax liability of a given individual. But that flexibility is a factor which is not present in the usual case of vacation pay, considered by the Supreme Court in *Lines*; there the individual employee does not control the amount accrued. The accrual is determined by the employer, and the employee does not have the option of either drawing down the vacation pay, or some part of it, in advance of the vacation period, or of causing additional sums to be withheld from his regular pay to be set aside in the vacation pay account.

Given these characteristics, there would be little utility in the employment of vacation pay as a means of defeating creditors in the first instance, and later defeating the trustee in bankruptcy. On the other hand, it is not at all difficult to conceive of an astute candidate for bankruptcy drastically increasing the amount of withholding for taxes, in view of impending financial difficulties, given the knowledge that the refund eventually obtained after filing bankruptcy would be free of the claims of creditors and the trustee as well. To the extent that the refund is attributable to optional withholding, the amount of which is controlled by the decision of the bankrupt, the analogy to *Lines* fails.

■ If a refund is held to be "property" within the meaning of § 70(a) of the Act, to the extent that it is attributable to the optional withholding, an additional question must be answered in resolving the issue of whether the refund is, to some extent at least, an asset of the estate. § 70(a) (5) provides that the trustee takes title to property which the bankrupt ". . . could have by any means transferred . . .", and so if the trustee would prevail, the bankrupt's interest in the tax refund must be found to be transferrable at the time the petition is filed. This determination involves preliminary consideration of the so-called Anti-Assignment Act, 31 U.S.C. § 203, which purports to bar any assignment of a claim against the United States

before the claim is liquidated and the warrant issued. It has been held, however, that § 203 does not impair the validity of an assignment of a claim against the government as between the parties, and that between them, the question is one of state law. Segal v. Rochelle, *supra*, 382 U.S. at 384, 86 S.Ct. 511, 15 L. Ed.2d 428 and cases there cited. The bankrupts in the present cases do not contend that the claims are not transferrable, and under California law there would appear to be ample support for that concession. See, In re Goodson, 208 F.Supp. 837 (S.D.Cal.1962). That case determined that under California law, equity would enforce such a transfer as between the parties, although it would probably not be legally enforceable. It was precisely that test which the Supreme Court used in *Segal* to hold the interest in the refund transferrable within the meaning of § 70(a) (5). To the extent that the refund is attributable to withholding in excess of the minimum required, it must be held to pass to the trustee upon filing of the petition.

The trustee, of course, takes title subject to whatever exemptions the bankrupt may be entitled to assert. §§ 70(a), and 6 of the Act, 11 U.S.C. §§ 110(a), and 24. The bankrupts' second argument is that a portion of the refund attributable to such optional withholding is exempt. The bankrupts contend that, on these facts, the taking of title to the refund check by the trustee constitutes a "garnishment", as that term is defined in the Consumer Credit Protection Act, 15 U.S.C. §§ 1671–1677, at 1672(c).

Under the provisions of Subchapter II of that Act as applied to these bankrupts, the garnisher can take only twenty-five percent of the "disposable earnings" of the debtor. "Disposable earnings" is the balance remaining after all deductions "required by law to be withheld" from earnings are made. 15 U.S. C. § 1672(b).

■■ The argument is that an order of the referee in bankruptcy requiring the bankrupt to turn over a tax refund

check traceable to wages constitutes a garnishment; admittedly, that theory seems somewhat strained at first glance. It is clear, however, that the source of the funds constituting the refund is within the meaning of the term "earnings" as it is defined in § 1672(a). There does not appear to be any reason of policy why the amount of the refund should be held to have lost its character as "earnings" by reason of its somewhat circuitous route to the wage-earner's hands. The entire amount of the refund would come within the definition of "disposable earnings" since nothing would be withheld. "Garnishment" is defined in § 1672(c) as "any legal or equitable procedure through which the earnings of any individual are required to be withheld for the payment of any debt". The process by which the trustee takes title is certainly "a legal or equitable procedure", and the purpose of requiring the trustee to marshal the assets of the bankrupt is to pay the debts of the bankrupt. If it would be inequitable to allow the bankrupt to defeat his creditors and the trustee by the simple expedient of increasing the level of withholding for taxes, so also it would seem unfair to punish the wage-earner, who elects to have a portion of his wages set aside through income tax withholding, by allowing all of the withheld wages in excess of actual tax liability to be taken by creditors or their representative, the trustee. It is in the national interest, according to the provisions of the Internal Revenue Code, to have taxpayers make certain that enough is withheld, so that taxes are promptly paid. The taxpayer is encouraged to err on the side of over-withholding. A decision here that all excess withholding must go to the trustee in bankruptcy would certainly tend to frustrate the objective of the withholding laws.

■ The middle course seems indicated. That part of the refund which is attributable to optional or elective withholding, that withholding in excess of the minimum required by law, should continue to receive the characterization required by its source—wages—and pass to the trustee subject to the same exemptions as do wages.

■ That conclusion is strengthened by the fact that § 1673(b) which enumerates the exceptions to the rule limiting the amount of garnishment, specifically deals with orders of bankruptcy courts. 15 U.S.C. § 1673(b) (2) provides: "any order of any court of bankruptcy *under Chapter XIII* of the Bankruptcy Act [emphasis supplied]" is excepted from the restrictions set out in the Subchapter. Chapter XIII is not, of course, involved in these "straight" bankruptcy proceedings. Under accepted canons of statutory construction, the mention of one specific type of bankruptcy proceeding must be taken by implication to exclude other types of proceedings. In addition, the statute is clearly remedial in general purpose. The exceptions to its coverage should, therefore, be strictly construed. From a slightly different perspective, unless the § 1673(b) (2) exception of orders in Chapter XIII proceedings is surplusage, Congress must have intended that the Act's restrictions on garnishment should apply to other, similar orders of the bankruptcy court not within the terms of the exception. From the standpoint of exercise of judicial power, the orders reviewed in the present proceedings are the same as the court might make in a Chapter XIII proceeding. The trustee, in his brief, offers no other rationale to explain the specific exception of § 1673(b) (2).

■ The bankrupts point out that the agency charged with the administration of Subchapter II of the Protection Act, the Wage and Hour Division of the Department of Labor appears to follow the construction of the Act which the bankrupts urge. The letter of Robert D. Moran, Administrator, attached to the bankrupts' brief as "Exhibit A", states in part: "The exemption in section 303(b) (2) [15 U.S.C. § 1673(b) (2)] of the Act runs only to orders of the Bankruptcy Court under Chapter XIII. Any

other order of a Bankruptcy Court would appear subject to the garnishment restrictions provided in section 303(a) [§ 1673(a)]." The construction of the administering agency is entitled to great weight. Red Lion Broadcasting Co. v. FCC, 395 U.S. 367, 381, 89 S.Ct. 1794, 23 L.Ed.2d 371 (1968), and cases cited therein. That construction certainly bolsters the other considerations discussed above.

No particular difficulty accompanies the administration of such a rule. The bankrupt must schedule his claim of exemption in any event. It will, therefore, be the election of the bankrupt to claim simply the protection of the Consumer Credit Protection Act, or to take the additional step and seek to establish that a portion of the refund, at least, was attributable to excessive minimum withholding. The information on levels of withholding is generally available, so that it would not be difficult for the trustee to verify the claim made. As a practical matter, many fewer persons will stand to benefit from the holding of total protection for funds attributable to excessive minimum withholding, than will benefit from the second aspect of this decision, with regard to which no administrative difficulty will be encountered.

■ As previously noted, one additional difficulty remains in the *Cedor* matter. Should the failure of the bankrupts to argue the *Lines v. Fredrick* rationale in proceedings before the referee prevent them from raising that issue here? The question is clearly one which is subject to the discretion of the district court. Because of the consolidation of these two matters, no judicial economy has been able to be effected by refusing to consider the issue that was not briefed and argued before the referee. There would seem to be no reason to bar these bankrupts now from the benefit of the rule here announced. Accordingly, it is

Ordered that the referee's orders in each of these matters denying the bankrupts' motions are vacated and set aside. The matters are remanded to the referee so that the bankrupts may properly schedule the amount of the refund attributable to the excess of minimum withholding over the tax actually due, and claim that amount as an asset not passing to the trustee. In the event that the bankrupts elect not to make such a claim, or are not able to establish such a claim when made, then the respective motions for return of the amount of the tax refund shall be granted to the extent of seventy-five percent of the total sum now held by the trustee which, the parties agree, constitutes the portion of the refund attributable to earnings prior to filing.