**In the Matter of Franklin Michael Gehrig, Bankrupt.**

**Franklin Michael GEHRIG, Appellant,**

v.

**Kenneth E. SHREVES, Trustee, Appellee.**

**No. 73–1352.**

United States Court of Appeals, Eighth Circuit.

Submitted Oct. 19, 1973.

Decided Feb. 6, 1974.

Robert S. Catz, Legal Aid Society of Omaha-Council Bluffs, Inc., Omaha, Neb., for appellant.

Kenneth E. Shreves, appellee, waived oral argument or filing of appellee's brief.

Before LAY, BRIGHT and WEBSTER, Circuit Judges.

BRIGHT, Circuit Judge.

This case raises important issues in the administration of the estates of bankrupt wage earners: whether post-bankruptcy income tax refunds derived from prebankruptcy wages can be claimed by the bankrupt's trustee as "property" within the scope of § 70 (a)(5) of the Bankruptcy Act;[1] and

---

1. Section 70(a)(5) of the Bankruptcy Act, 11 U.S.C. § 110(a)(5), in relevant part reads:

(a) The trustee of the estate of a bankrupt and his successor or successors, if any, upon his or their appointment and qualification, shall in turn be vested by operation of law with the title of the bankrupt as of the date of the filing of the petition initiating· a proceeding under

whether the tax refund is subject to the restrictions on wage garnishments of the Consumer Credit Protection Act of 1968.[2]

The district court adopted the opinion of the bankruptcy referee and held that the refund from overpayment of income tax by Franklin Michael Gehrig belonged to the trustee in bankruptcy. Bankrupt-Gehrig appeals this decision. We reverse and remand the case for further proceedings.

In passing on the issues in this appeal, we are mindful of a conflict between two other circuits.[3] In the case of In re Cedor, 337 F. Supp. 1103 (N.D. Cal.1972), affirmed by the Ninth Circuit in In re James, 470 F.2d 996 (9th Cir.), cert. denied sub nom. Walsh v. Cedor, 411 U.S. 973, 93 S.Ct. 2148, 36 L. Ed.2d 697 (1973), it was held that income tax refunds generated from the *minimum* amounts withheld from wages as required by law does not constitute § 70(a)(5) "property" and, therefore, such refund belongs to the taxpayer-bankrupt. The *Cedor* court also ruled that a refund of income taxes attributable to optional withholding of amounts *greater than the minimum* required by law should be considered as wages which are protected by the anti-garnishment

provisions of the Consumer Credit Protection Act, 15 U.S.C. §§ 1672 and 1673. The Second Circuit's opinion of In re Kokoszka, 479 F.2d 990 (2d Cir.), cert. granted sub nom. Kokoszka v. Belford, 414 U.S. 1091, 94 S.Ct. 721, 38 L.Ed.2d 548 (1973), decided that a wage earner's income tax refunds did constitute "property" passing to the trustee and that the Consumer Credit Protection Act was inapplicable.

We agree with the court in *Cedor* that such tax refunds do not constitute "property" under § 70(a)(5), but we are unpersuaded by its finding that the anti-garnishment provisions of the Consumer Credit Protection Act applies.

## I.

### TAX REFUND ATTRIBUTABLE TO MINIMUM WITHHOLDING.

■ Our decision turns upon an analysis of two Supreme Court decisions. In Segal v. Rochelle, 382 U.S. 375, 86 S. Ct. 511, 15 L.Ed.2d 428 (1966), the Court considered a loss-carryback tax refund claim obtained by a bankrupt partnership which related to prebankruptcy losses. The Court concluded that refund claims had passed to the trustee under § 70(a)(5) as "property 'which prior to

this title, except insofar as it is to property which is held to be exempt, to all of the following kinds of property * * * (5) property, including rights of action, which prior to the filing of the petition he could by any means have transferred or which might have been levied upon and sold under judicial process against him, or otherwise seized, impounded, or sequestered * * *.

2. The anti-garnishment provisions of the Consumer Credit Protection Act of 1968 are found in 15 U.S.C. §§ 1672 and 1673, which read in part:

§ 1672. Definitions
For the purposes of this subchapter:
(a) The term "earnings" means compensation paid or payable for personal services, whether denominated as wages, salary, commission, bonus, or otherwise, and includes periodic payments pursuant to a pension or retirement program.
(b) The term "disposable earnings" means that part of the earnings of any in-

dividual remaining after the deduction from those earnings of any amounts required by law to be withheld.
(c) The term "garnishment" means any legal or equitable procedure through which the earnings of any individual are required to be withheld for payment of any debt.
§ 1673. Restriction on garnishment—Maximum allowable garnishment
(a) Except as provided in subsection (b) of this section and in section 1675 of this title, the maximum part of the aggregate disposable earnings of an individual for any workweek which is subjected to garnishment may not exceed
(1) 25 per centum of his disposable earnings for that week[.]

3. For a general review and discussion of the questions presented here see Note, The Income Tax Refund as a Possible Asset of a Wage Earner's Bankruptcy Estate, 87 Harv.L.Rev. 395 (1973); Comment, Title to Property—Employee Bankrupt's Income Tax Refunds, 47 Am.Bankr.L.J. 239 (1973).

the filing of the petition . . . . [the bankrupt] could by any means have transferred.'" *Id.* at 381, 86 S.Ct. at 516 (footnote omitted) (brackets in original).

In *Segal*, the Court rejected the holdings of Fournier v. Rosenblum, 318 F.2d 525 (1st Cir. 1963), and In re Sussman, 289 F.2d 76 (3d Cir. 1961), that such loss-carryback refund claims for pre-bankruptcy business operations do not pass to the trustee. Although the tax refund claims in *Segal* could be made only *after* the close of the tax year in which the bankruptcy occurred, the Court said that potential claims for loss-carryback refunds constitute "property" within the language of § 70(a)(5) since, among other things, these refund claims are "sufficiently rooted in the pre-bankruptcy past and so little entangled with the bankrupts' ability to make an unencumbered fresh start * * *." *Segal, supra* at 380, 86 S.Ct. at 515.

The second Supreme Court decision which is apposite to this appeal is Lines v. Frederick, 400 U.S. 18, 91 S.Ct. 113, 27 L.Ed.2d 124 (1970) (per curiam). There the Court ruled that a wage earner's vacation pay, accrued but unpaid upon the filing of the petition in bankruptcy, did not pass to the trustee in bankruptcy as "property" under § 70(a)(5). The Court focused on the beneficent purpose of the Bankruptcy Act and said:

> The wage-earning bankrupt who must take a vacation without pay or forgo a vacation altogether cannot be said to have achieved the "new opportunity in life and [the] [brackets in original] clear field for future effort, unhampered by the pressure and discouragement of preexisting debt," Local Loan Co. v. Hunt [292 U.S. 234, 54 S.Ct. 558, 78 L.Ed. 1049] which it was the purpose of the statute to provide. [400 U.S. at 20, 91 S.Ct. at 114.]

*See also* Williams v. U. S. Fidelity Co., 236 U.S. 549, 554–555, 35 S.Ct. 289, 59 L.Ed. 713 (1915).

Distinguishing vacation pay in *Lines* from the tax refund claim arising out of business operations in *Segal*, the Court added:

> Applied to the set of facts before us here, the principles reflected in the earlier cases compel a decision for the bankrupt. In *Segal*, a business had ceased to operate and the task of the trustees in bankruptcy was to marshal whatever assets were left for distribution to the creditors. The tax refund claim, arising out of the operations of the business and specifically out of the losses that had precipitated its failure, was such an asset. By contrast, the respondents here are wage earners whose sole source of income, before and after bankruptcy, is their weekly earnings. The function of their accrued vacation pay is to support the basic requirements of life for them and their families during brief vacation periods or in the event of layoff. Since it is a part of their wages, the vacation pay is "a specialized type of property presenting distinct problems in our economic system." Sniadach v. Family Finance Corp., 395 U.S. 337, 340, 89 S.Ct. 1820, 23 L.Ed.2d 349 [400 U.S. at 20, 91 S.Ct. at 114.]

Resolution of the instant controversy rests on whether the rationale of *Segal* or *Lines* most appropriately applies to the wage earner's tax refund claim made here. The Second Circuit in *Kokoszka* rejected *Lines* as the applicable precedent, concluding that:

> What we have then in *Lines* is a very narrow exception to the general proposition that everything of value passes to the trustee, i. e., vacation pay which will become essential for basic week to week support in the future does not pass. Because a tax refund is not the weekly or other periodic income required by a wage earner for his basic support, to deprive him of it will not hinder his ability to make a *fresh* start unhampered by the pressure of preexisting debt. There-

fore, the tax refund is § 70(a)(5) property which passes to the trustee. [479 F.2d at 994–995.]

As we have already noted, the Ninth Circuit reached a contrary conclusion in affirming *Cedor*. Ruling that the income tax refund is equivalent to the vacation pay present in *Lines*, the *Cedor* court stated:

There is nothing to suggest that the sums refunded were related to the circumstances which precipitated the bankruptcy. The Supreme Court considered the question in *Segal* to be "close", 382 U.S. 379 * * *; in light of *Lines* and *Snaidach* [sic], [395 U.S. 337, 89 S.Ct. 1820, 23 L.Ed. 2d 349], the balance on this question tips in favor of the bankrupt. The collection by the Internal Revenue Service without the consent or control of the bankrupt, and the belated refund, render these funds quite similar in a practical sense, to the accrued but unpaid wages which constituted vacation pay. If *Lines* stands for anything, it is that the practical realities are controlling in this determination. While the amount of refund is not so easy to calculate as the amount of vacation pay, it may generally be said to be an amount that, by reason of past experience, is anticipated by the wage-earner as an annual event. To deprive the wage-earner of that planned-on annually recurring payment, cannot be said to be less severe than the deprivation of two weeks of paid vacation, in terms of a fresh start. [337 F.Supp. at 1105.]

Although related questions have come before us, we have not heretofore passed on the precise issue presented by this appeal. However, we comment briefly on cases of this circuit which involved tangential issues.

The district court for the District of Minnesota had previously considered and denied a claim identical to that made by

appellant-Gehrig. In re Jones, 337 F. Supp. 620 (D.Minn.1971).[4] We denied the bankrupt's leave to appeal under Section 24 of the Bankruptcy Act, 11 U. S.C. § 47(a), which section permits an appeal of a judgment of less than $500 only upon allowance of the appellate court. The bankrupt applied for certiorari but the application was denied, 404 U.S. 1040, 92 S.Ct. 719, 30 L.Ed.2d 732 (1972). Our denial of leave to appeal did not constitute a decision on the merits.

We considered and rejected a bankrupt wage earner's claim to an income tax refund attributable to withholding of wages in excess of minimum amounts specified by law against the claim of a trustee in bankruptcy in In re Wetteroff, 453 F.2d 544 (8th Cir.), cert. denied, 409 U.S. 934, 93 S.Ct. 242, 34 L. Ed.2d 188 (1972). In *Wetteroff*, the bankrupt claimed his filing of a joint tax return with his wife who had no taxable income, created a tenancy by the entirety in a claim for an income tax refund attributable to overwithholding from his wages because of the bankrupt's deliberate failure to claim his full tax exemption entitlements. The bankrupt's claim rested on provisions of Missouri law under which persons holding as tenants by the entirety obtained no separate interest in property. The bankrupt argued, therefore, that since he and his wife held the tax refund in tenancy by the entirety, he could not acquire an individual interest in the refund claim which would pass to his trustee in bankruptcy. We rejected the contention, observing that a joint tax return cannot be deemed an instrument of conveyance or transfer by which the husband could be deemed to have conveyed any interest in his income tax refund from himself to his wife and himself. Thus, we ordered that the refund be paid to the trustee. But in *Wetteroff* as well, we did not meet the issue raised by the instant appeal.

---

4. That court reached a similar conclusion in an unpublished opinion, In re Meredith J.

Wise, 4–72–Bky 617(N) (D.Minn., July 17, 1973).

We think the refund here is comparable to the wage earner's accrued vacation pay considered in *Lines* and that it should be afforded the same status under § 70(a)(5). Following *Lines*, we hold taxpayer-Gehrig entitled to that part of the tax refund attributable to the minimum withholding from his wages as required by law. In arriving at this conclusion, we have carefully analyzed the source of funds which made possible the postbankruptcy refund.

The right to receive a tax refund is tied to the forced deductions from the taxpayer's wages. Without the compulsion of law, the taxpayer would have earlier received the amounts here in question as wages. It is not likely that a wage earner-bankrupt would have used these funds to reduce his burden of old debts for as the Supreme Court has recognized, "[t]he debtor's wages are his sustenance, with which he supports himself and his family. The average low income wage earner spends nearly nine-tenths of those wages for items of immediate consumption." James v. Strange, 407 U.S. 128, 135, 92 S.Ct. 2027, 2032, 32 L.Ed.2d 600 (1972) (footnote omitted).

Gehrig's annual earnings although not "low income," were nevertheless modest.[5] In view of his limited earnings and in the absence of any assets other than exempt property aside from the tax refund, as shown by the records of the bankruptcy court, we think it may be assumed that appellant's economic status was near that of the average "low income wage earner" described in *James, supra,* who spends almost all earnings for items of immediate consumption.

Furthermore, the fact that a low income wage earner must forgo the immediate enjoyment and use of all his earnings because of the withholding of a part for tax purposes does not change his continuing need to spend all his funds on hand for personal and family sustenance whenever those funds become available.

The source of the refund from the bankrupt's wages contrasts with that of the businessman's refund in *Segal.* In *Segal,* the Supreme Court specifically noted that the taxpayers-partners had paid taxes on net income for the three years preceding bankruptcy, but showed a net loss for the year of bankruptcy. Thus, the very losses generating the refunds may have precipitated the bankruptcy. Moreover, the business earnings which were paid to the government in taxes, if not used for that purpose, would ordinarily have remained as a business asset subject to creditors' claims. But here we have no debtor's losses producing a tax refund nor the likelihood of the creation of a cash reserve for creditors if the debtor had retained that part of his wage withholding not needed for income taxes.

We do not construe *Lines,* as the Second Circuit did in *Kokoszka,* as representing a very narrow exception to the rule that everything of value passes to the trustee except items such as vacation pay which are essential for basic week-to-week periodic support. *Lines* should not be construed as an "exception" but as expressing a general policy of giving a debtor a new start after bankruptcy. As stated by the Supreme Court in the early case of Traer v. Clews, 115 U.S. 528, 541, 6 S.Ct. 155, 160, 29 L.Ed. 467 (1885):

> The policy of the bankrupt[cy] act was, after taking from the bankrupt all his property not exempt by law, to discharge him from his debts and liabilities, and enable him to take a fresh start.

Such policy underlies the decision in Local Loan Co. v. Hunt, 292 U.S. 234, 54 S.Ct. 695, 78 L.Ed. 1230 (1934), where the Court invalidated as a lien interest

---

5. Low wage earners are defined as families with after-tax income of less than $5,000. James v. Strange, 407 U.S. 128 at 135 n. 16, 92 S.Ct. 2027, 32 L.Ed.2d 600 (1972). In this case the record shows Gehrig as a laborer receiving $7,800 in wages during the calendar year 1971, the year for which the tax refund was paid. The record also shows him as married.

in bankruptcy an assignment of future wages against a wage earner who became bankrupt subsequent to the assignment. The Court commented:

> The power of the individual to earn a living for himself and those dependent upon him is in the nature of a personal liberty quite as much as if not more than it is a property right. To preserve its free exercise is of the utmost importance, not only because it is a fundamental private necessity, but because it is a matter of great public concern. From the viewpoint of the wage-earner there is little difference between not earning at all and earning wholly for a creditor. [292 U.S. at 245, 54 S.Ct. at 699.]

Applying these fundamental principles underlying the Bankruptcy Act, a tax refund should be considered as the kind of asset, like the receipt of vacation pay, which should remain with the debtor-wage earner when paid him regardless of the intervention of bankruptcy. Thus freed of preexisting debt by reason of his intervening bankruptcy, the wage earner may truly be afforded a "new opportunity in life." [6]

Additionally, the case for considering a wage earner's tax refund generated from minimum withholding as not falling within the purview of § 70(a)(5), is as strong, if not stronger than the case made for accrued but unpaid vacation pay. Although the bankrupt's right to receive each payment originated in the prebankruptcy past, each payment possessed the following common attributes:

1) Each payment would be needed to support the bankrupt's basic requirements of life for them and their families;

2) Each payment was derived from the bankrupt's earning of wages;

3) In each case, the bankrupt had no right to obtain the funds in question

prior to the intervention of bankruptcy; and

4) As to each bankrupt, the receipt of such payment would ordinarily be considered as a payment of deferred earnings from employment.

Finally, at least as to minimum withholding, the instant tax refund originated from monies withheld from the wage earner under compulsion of law.

However, we limit our decision to compulsory minimum withholding required by law for federal and state income tax purposes. To the extent that the tax refund in this case may be attributable to voluntary optional withholding by the debtor in excess of the minimum legal requirements, we hold the trustee entitled to such amount.

## II.

## TAX REFUND FROM EXCESS WITHHOLDING.

■ In effect, bankrupt-Gehrig further argues that amounts of tax refunds attributable to voluntary optional excessive withholding of wages should be treated as disposable earnings not reachable by creditors nor the trustee except to the exent of 25 percent thereof by virtue of the protection afforded wage earners under the Consumer Credit Protection Act's limitation on garnishment, 15 U.S.C. §§ 1672, 1673. The opinions of In re Cedor, *supra*, 337 F.Supp. at 1106–1107, and In re Kokoszka, *supra*, 479 F.2d at 996–997, have considered possible application of this statute to income tax refunds. *Cedor* applied these sections to tax refunds generated by withholding of wages for tax purposes in excess of minimums required by law, but *Kokoszka* rejected a similar application, holding the entire amount of the refund not to be earnings under § 1672 and not protected by § 1673. In substance, we concur with the Second Cir-

---

6. *Cf.* In re Aveni, 458 F.2d 972 (6th Cir.), cert. denied sub nom. Aveni v. Richman, 409 U.S. 877, 93 S.Ct. 129, 34 L.Ed.2d 131 (1972), which applied a different rationale in its holding that accrued but unpaid wages to the extent not exempt from attachment under Ohio law passed to the trustee in bankruptcy under § 70(a)(5) of the Bankruptcy Act.

cuit's holding that a tax refund does not qualify for protection under the Act. In its analysis that court stated:

> The intent of the Consumer Act was to make sure that wage earners were able to receive at least 75% of their take home pay in any one pay period so that they would have enough cash to meet basic needs. As a side effect, it was hoped that honest debtors, with this protection on their wages, would not be forced into bankruptcy, H.Rep. No.1040, 90th Cong., 2d Sess., U.S. Code Cong. & Ad.News, pp. 1962, 1977–79 (1968). It is clear, then, both from the language of the statute, §§ 1672, 1673 and the legislative intent, that "earnings" means periodic payments of compensation and does not pertain to every asset that is traceable in some way to such compensation. [479 F.2d at 996–997.]

We deem the optional withholding over minimums required by law akin to savings of the bankrupt, which, while having an origin in wages, no longer should be considered as wages because the debtor has voluntarily changed his wages into savings. These "savings" should be reachable by the trustee under § 70(a)(5), and are not "earnings" within the ambit of §§ 1672 and 1673, simply because they are in some way traceable to such funds.

### III.

### CONCLUSION.

The refund in this case is substantial —$654. The record does not disclose whether Gehrig, the bankrupt-wage earner, availed himself of the maximum exemptions from withholding to which he was entitled under the federal and state income tax laws.

■ Accordingly, we reverse and remand this case to the district court for further proceedings. The bankrupt should be awarded that part of the refund of income taxes attributable to the withholding of legally required minimum amounts from his prebankruptcy wages. The burden of proof to establish the amount of his claim rests upon the bankrupt.[7]

Reversed and remanded.

WEBSTER, Circuit Judge (concurring in part and dissenting in part).

I concur in the holding of the majority opinion that a tax refund does not qualify for protection under the Consumer Credit Protection Act. I respectfully dissent, however, from the holding that a tax refund resulting from compulsory minimum withholding required by law for federal and state income tax purposes is not "property" within the meaning of § 70(a)(5) of the Bankruptcy Act, 11 U.S.C. § 110(a)(5). I believe that *Cedor* [1] unduly extended the narrow holding of Lines v. Frederick, 400 U.S. 18, 91 S.Ct. 113, 27 L.Ed.2d 124 (1970), which was confined to the unique characteristics of vacation pay. Instead, I am fully persuaded by the reasoning of the Second Circuit in *Kokoszka*,[2] which holds such refunds to be § 70(a)(5) "property".

---

7. The Commission on Bankruptcy Laws of the United States has submitted to Congress a proposed revision of the Bankruptcy Act —the Bankruptcy Act of 1973—which would partially solve the problems posed in the instant case. This Act contains an exemption provision, which designates as other-exempt property, "cash, securities, and receivables, including unpaid personal earnings, accrued vacation pay, and income tax refund, to the aggregate value of not more than $500[.]" § 4–503(c)(3) of the Bankruptcy Act of 1973 [Proposed], Report of the Commission on the Bankruptcy Laws of the United States, H.R.Doc. No. 93–137, 93rd Cong., 1st Sess. Part I at 172, Part II at 125 (1973).

1. In Re Cedor, 337 F.Supp. 1103 (N.D.Cal.), aff'd mem, sub nom. In Re James, 470 F.2d 996 (9th Cir. 1972), cert. denied sub nom. Walsh v. Cedor, 411 U.S. 973, 93 S.Ct. 2148, 36 L.Ed.2d 697 (1973).

2. In Re Kokoszka, 479 F.2d 990 (2d Cir. 1973), cert. granted sub nom. Kokoszka v. Belford, 414 U.S. 1091, 94 S.Ct. 721, 38 L.Ed.2d 548 (U.S. Dec. 11, 1973). See also Judge Larson's carefully considered opinion in In Re Jones, 337 F.Supp. 620 (D.Minn.), appeal denied, Misc. No. 808 (8th Cir. 1971), cert. denied, 404 U.S. 1040, 92 S.Ct. 719, 30 L.Ed.2d 732 (1972).

I cannot accept the compromise implicit in the majority opinion, which would treat as "property" only that portion of the refund attributable to taxes withheld in excess of the mandatory requirements. Nor am I impressed by the argument that substantial numbers of wage earners may rely upon routine tax refunds to meet the subsistence requirements of their families. While this may be so, it is a consideration materially different from the expectation of vacation pay to cover a specific period when the wage earner would otherwise have no source of income. Finally, as noted in *Kokoszka, supra,* debtors who face the situation where their non-exempt assets will be entirely eaten up by administration costs, leaving nothing for creditors, can move the bankruptcy court for an order of abandonment. 470 F.2d at 996.

I would affirm the judgment of the District Court.