In re Francis J. THOMAS, Bankrupt.

Carl L. BEKOFSKE, Trustee Plaintiff,

v.

Francis J. THOMAS, Bankrupt
Defendant.

Bankruptcy No. 79–60506 C–1.

United States Bankruptcy Court,
E. D. Michigan, S. D.,
Flint.

Oct. 21, 1981.

**760**

Carl L. Bekofske, Flint, Mich., for trustee plaintiff.

Harvey R. Dean, Wall & Dean, Warren, Mich., for bankrupt defendant.

## MEMORANDUM OPINION

HAROLD H. BOBIER, Bankruptcy Judge.

*Statement of Facts*

On September 14, 1979, Francis J. Thomas filed a voluntary petition for a straight bankruptcy in this Court. Adjudication in bankruptcy occurred at that time by operation of law. The bankrupt was employed as a wage earner throughout the calendar year 1979. There was no significant variation in earnings during each pay period. The bankrupt's wife, who did not file bankruptcy, had no income and did not contribute withholding or any other form of tax prepayment. In addition to his wife, Thomas has three dependent children, each of whom he could have claimed as an exemption for withholding tax purposes. However, during the entire calendar year of 1979, Thom-as claimed only three exemptions for withholding tax purposes.

After January 1, 1980, Thomas and his wife filed joint income tax returns with the City, State, and Federal governments for the calendar year 1979. All three of their children were claimed as tax exemptions. Therefore, for withholding tax purposes the bankrupt claimed only three exemptions; whereas he claimed five exemptions on each of his tax returns.

The total refunds the bankrupt received from the City, State, and Federal governments amounted to $2,730. On February 19, 1981, however, the trustee filed a complaint for turnover of nonexempt tax refunds wherein the trustee demanded the entire $2,730 to be turned over to the estate for distribution to creditors. The bankrupt, through his attorney, filed an answer and brief on March 4, 1981, which objected to the trustee's request.

A hearing on the trustee's complaint was conducted by the Court on April 28, 1981. After hearing the arguments presented by the parties, the Court took the matter under advisement and requested that the attorney for the bankrupt file a bill of particulars and the trustee to file a brief in support of his position. Those pleadings having now been duly filed with the Court, the questions presented by the parties for the Court's determination are now ready for resolution.

*Issues*

The parties have agreed that there exist three issues which need to be resolved by the Court. They are as follows:

1. Is the bankrupt entitled to have the tax refunds he received for the calendar year 1979 pro-rated to reflect the portion of the total tax refunds which are not subject to the claim of the trustee in bankruptcy?

2. Of the pro-rated amount the trustee is entitled to receive, should that amount be reduced by one-half as a result of the bankrupt's spouse's purported interest in those funds when in fact such spouse did not earn any wages nor contribute any withholding taxes in the taxable year in question?

3. Should the pro-rated amount of the bankrupt's tax refund which is subject to administration by the trustee be calculated from the number of exemptions which the bankrupt actually declared for withholding purposes or the number of exemptions he could have declared?

*Discussion of Law*

As set forth above, Francis J. Thomas filed his petition to be adjudicated a bankrupt in these proceedings on September 14, 1979. Since the petition was filed prior to September 30, 1979, it constituted a case commenced under the Bankruptcy Act of 1898, and consequently, all matters and proceeding in and relating to this case are to be conducted and determined under the Bankruptcy Act of 1898, as amended. *See* P.L. 95–598, § 403(a), 92 Stat. 2683 (1978).

The question of whether a bankrupt's tax refund is subject to the administration by the trustee has been repeatedly presented to the courts. The most illustrative and often cited cases in recent times have been *Segal v. Rochelle*, 382 U.S. 375, 86 S.Ct. 511, 15 L.Ed.2d 428 (1966) and *Lines v. Frederick*, 400 U.S. 18, 91 S.Ct. 113, 27 L.Ed.2d 124 (1970). In *Segal*, two partners of a bankrupt partnership made a claim for loss-carryback tax refunds which the partnership was entitled to receive after the filing of the petition in bankruptcy, but which arose as a result of partnership losses incurred prior to the filing of the petition in bankruptcy. The Supreme Court held that the loss-carryback tax refunds could be administered by the trustee because they constituted "property" of the estate and were "transferable" within the meaning of Section 70(a)(5) of the Bankruptcy Act.

In *Lines*, the question presented was whether the United States Supreme Court would extend the rationale used in *Segal* to include accrued, but unpaid, vacation pay due to a bankrupt wage earner at the time of the filing of the petition in bankruptcy. The court declined to extend *Segal* to include unpaid vacation pay within the meaning of Section 70(a)(5) of the Bankruptcy Act. The court's reasoning was as follows:

Applied to the set of facts before us here, the principles reflected in the earlier cases compel a decision for the bankrupt. In Segal, a business had ceased to operate and the task of the trustees in bankruptcy was to marshal whatever assets were left for distribution to the creditors. The tax refund claim, arising out of the operations of the business and specifically out of the losses that had precipitated its failure, was such an asset. By contrast, the respondents here are wage earners whose sole source of income, before and after bankruptcy, is their weekly earnings. The function of their accrued vacation pay is to support the basic requirements of life for them and their families during brief vacation periods or in the event of layoff. Since it is a part of their wages, the vacation pay is "a specialized type of property presenting distinct problems in our economic system." *Sniadach v. Family Finance Corp.* 395 U.S. 337, 340, 89 S.Ct. 1820 [1822], 23 L.Ed.2d 349, 353. Where the minimal requirements for the economic survival of the debtor are at stake, legislatures have recognized that protection that might be unnecessary or unwise for other kinds of property may be required. See, e. g., the Consumer Credit Protection Act, § 301, 82 Stat. 163, 15 USC § 1671 (1964 ed., Supp. V). *Lines v. Frederick, supra*, at 20, 91 S.Ct. at 114.

The cases which have relied on either *Segal* or *Lines* in determining whether income tax refunds were to be included as property of the estate have come to different conclusions. For example, *In the Matter of Buchholtz*, 259 F.Supp. 31 (D.Minn. 1966) the court cited *Segal* in affirming the decision of the referee to include a portion of a joint income tax refund in the administration of the bankruptcy case. In *Buchholtz*, both the bankrupt husband and his non-bankrupt wife earned income subject to withholding taxes. The trustee made a claim for the proportionate amount of the tax refund which was attributable to the husband's earnings, and the bankruptcy court agreed with the trustee's position. On appeal, the district court affirmed the bankruptcy court's ruling and concluded;

The Bankruptcy Court sits, as the parties concede, as a Court of equity. The Referee in the exercise of his equity jurisdiction has determined that a fair determination requires that the refund be allocated in proportion to the respective withheld tax contributions. Other choices might possibly be made. The contribution formula seems clearly equitable and is the preferred choice. *Id.* at 32.

In the case of *In re Jones*, 337 F.Supp. 620 (D.Minn.1971) the court held that a proportionate share of the bankrupt's tax refund constituted property within Section 70(a)(5) of the Bankruptcy Act. The facts in *Jones* were almost identical to those in the present case. The bankrupt and his wife filed a joint tax return and claimed their two children as tax exemptions. The bankrupt was the only wage earner and was entitled to receive a tax refund based on excess withholding taxes. The trustee in *Jones* made a claim for that portion of the income tax refund which was calculated by a ratio of the number of days of the year which had passed at the time of the adjudication over the 365 days in a calendar year. The bankruptcy court approved this formula and directed the debtor to turnover the proportionate share of the tax refund which the trustee was entitled to receive. On appeal, after an exhaustive discussion of the *Segal* and *Lines* decisions, the district court affirmed the ruling of the bankruptcy referee and stated:

It is not clear to this Court that wages withheld prior to adjudication are so entwined with the bankrupt's future wage earning activity that they should receive the same treatment as future wages. This is especially true of that portion of the withholding that can be allocated to preadjudication earnings. The decision by the Referee that the refund constituted property within § 70(a)(5) has a rational basis in the law.

. . . .

The Bankruptcy Court sits as a court of equity. The Referee in the exercise of his equity jurisdiction has determined that the formula proposed by the trustee provides a fair allocation of the tax re-

fund. The bankrupt and his wife chose to file a joint return. Having so decided, the bankrupt should not be permitted to rely upon a result which would have obtained had he chosen another course of action. In addition, in the instant case the wife had no income of her own. Thus there is no problem of compelling the non-bankrupt wife to contribute part of her earnings to a fund for the benefit of her husband's creditors. (Footnote omitted.) *Id.* at 624–625.

Counsel for the bankrupt herein has consistently cited to *Gehrig v. Shreves*, 491 F.2d 668 (8th Cir. 1974) in support of the proposition that the trustee has no right to the bankrupt's tax refund. The split decision rendered in *Gehrig*, however, is not pursuasive. In fact, the majority opinion was fully cognizant of the fact that the Court of Appeals for the Second Circuit had already rejected the *Lines* rationale when it stated:

Resolution of the instant controversy rests on whether the rationale of *Segal* or *Lines* most appropriately applies to the wage earner's tax refund claim made here. The Second Circuit in *Kohoszka* [479 F.2d 990] rejected *Lines* as the applicable precedent, concluding that:

What we have then in *Lines* is a very narrow exception to the general proposition that everything of value passes to the trustee, i. e., vacation pay which will become essential for basic week to week support in the future does not pass. Because a tax refund is not the weekly or other periodic income required by a wage earner for his basic support, to deprive him of it will not hinder his ability to make a fresh start unhampered by the pressure of preexisting debt. Therefore, the tax refund is § 70(a)(5) property which passes to the trustee. (479 F.2d at 994–995.)

As we have already noted, the Ninth Circuit reached a contrary conclusion in affirming *Cedor* [337 F.Supp. 1103 (N.D. Cal.1972)]. Ruling that the income tax refund is equivalent to the vacation pay present in *Lines*, the *Cedor* court stated:

There is nothing to suggest that the sums refunded were related to the circumstances which precipitated the bankruptcy. The Supreme Court considered the question in *Segal* to be "close", 382 U.S. 379 [86 S.Ct. 514] * *; in light of *Lines* and *Snaidach* [sic], [395 U.S. 337, 89 S.Ct. 1820, 23 L.Ed.2d 349], the balance on this question tips in favor of the bankrupt. The collection by the Internal Revenue Service without the consent or control of the bankrupt, and the belated refund, render these funds quite similar in a practical sense, to the accrued but unpaid wages which constituted vacation pay. If *Lines* stands for anything, it is that the practical realities are controlling in this determination. While the amount of refund is not so easy to calculate as the amount of vacation pay, it may generally be said to be an amount that, by reason of past experience, is anticipated by the wage-earner as an annual event. To deprive the wage-earner of that planned-on annually recurring payment, cannot be said to be less severe than the deprivation of two weeks of paid vacation, in terms of a fresh start. [337 F.Supp. at 1105.] *Id.* at 670–671.

The dissenting opinion in *Gehrig* came to a completely contrary result and concluded by stating:

I respectfully dissent, however, from the holding that a tax refund resulting from compulsory minimum withholding required by law for federal and state income tax purposes is not "property" within the meaning of § 70(a)(5) of the Bankruptcy Act, 11 U.S.C. § 110(a)(5). I believe that *Cedor* unduly extended the narrow holding of *Lines v. Frederick*, 400 U.S. 18, 91 S.Ct. 113, 27 L.Ed.2d 124 (1970), which was confined to the unique characteristics of vacation pay. Instead, I am fully persuaded by the reasoning of the Second Circuit in *Kokoszka*, which holds such refunds to be § 70(a)(5) "property". (Footnote omitted.) *Id.* at 674.

An additional reason why this Court should not follow the *Gehrig* decision is because a different panel of Circuit Judges for the Eighth Circuit had previously ruled in the case of *In re Wetteroff*, 453 F.2d 544 (8th Cir. 1972), *cert. denied*, 409 U.S. 934, 93 S.Ct. 242, 34 L.Ed.2d 188 (1973) that a joint tax return could not be considered entireties property, and therefore, whatever interest a non-bankrupt wife might have in a joint tax return cannot be a bar to the administration of an asset of the bankrupt husband's estate. The *Wetteroff* decision does provide a basis for holding against the bankrupt herein with respect to the second issue presented above.

As a result of the conflicts which existed between the Second and Eighth Circuits, the United States Supreme Court addressed the issue of the treatment of income tax refunds under § 70(a)(5) of the Bankruptcy Act in *Kokoszka v. Belford*, 417 U.S. 642, 94 S.Ct. 2431, 41 L.Ed.2d 374 (1974). The court held in *Kokoszka* that a tax refund does constitute "property" within the meaning of § 70(a)(5) and cannot be exempted under the provisions of the Consumer Credit Protection Act. In affirming the Court of Appeals of the Second Circuit, the Court stated:

As the Court of Appeals noted, since a "tax refund is not the weekly or other periodic income required by a wage earner for his basic support, to deprive him of it will not hinder his ability to make a *fresh* start unhampered by the pressure of preexisting debt," 479 F.2d 990, 995 (CA2 1973). "Just because some property interest had its source in wages ... does not give it special protection, for to do so would exempt from the bankrupt estate most of the property owned by many bankrupts, such as savings accounts and automobiles which had their origin in wages." Ibid.

We conclude, therefore, that the Court of Appeals correctly held that the income tax refund is "sufficiently rooted in the prebankruptcy past" to be defined as "property" under § 70a(5). (Footnote omitted.) *Id.* at 648, 94 S.Ct. at 2435.

The United States Supreme Court likewise rejected the bankrupt's argument that the Consumer Credit Protection Act exempts income tax refunds from the administration of a bankruptcy estate when it stated:

> An examination of the legislative history of the Consumer Protection Act makes it clear that, while it was enacted against the background of the Bankruptcy Act, it was not intended to alter the clear purpose of the latter Act to assemble, once a bankruptcy petition is filed, all of the debtor's assets for the benefit of his creditors. *Id.* at 650, 94 S.Ct. at 2436.

Although counsel for the bankrupt in the present case has advanced several different theories as to why the trustee should not receive the tax refunds in question, this Court has not been referred to any authority to support these theories, nor has its independent research uncovered any such authority. The only persuasive argument which has been presented is to the effect that there should be an apportionment of the tax refunds in question between pre-petition and post-petition withholding taxes which formed the basis for the tax refunds in question. It is clear to this Court that the only equitable manner in which to make such an apportionment is by counting the number of days in the calendar year which had passed prior to the filing of the petition in bankruptcy and dividing this number by the 365 days of the calendar year to determine the appropriate proration. Since the bankrupt's petition was filed in this Court on the 257th day of the year, the turnover sought by the trustee should be limited to 257/365ths of the total refund (i. e., 70.41%). Applying this percentage to the $2,730 received by the bankrupt, the net turnover which the trustee is entitled to receive is $1,922.19.

*Conclusion*

In summary, it is the considered opinion of this Court, based on the above discussion of applicable cases and statutes that the trustee is entitled to a turnover order in the amount of $1,922.19 for the following reasons:

1. The income tax refunds do constitute "property" within the purview of § 70(a)(5) of the Bankruptcy Act. *Kokoszka v. Belford, supra.*

2. The amount of the tax refunds to which the trustee is entitled should not be reduced by any interest, if any, the bankrupt's wife may have in those funds. The entire amount of withholding payments made were derived solely from the bankrupt's wages, and although his wife joined in filing the tax returns, this should not reduce the trustee's interest. *In re Wetteroff, supra.*

3. The method of apportioning the amount of the tax refunds is inherently equitable to all parties concerned. *In re Jones, supra.*

A separate order shall be entered in accordance with this opinion.