**In re Harold Eugene BAKER, Debtor.**

**Harold Eugene BAKER, Plaintiff,**

v.

**Dorothy A. BAKER, Defendant.**

**Bankruptcy No. 91–10906–8P7.**
**Adv. No. 91–538.**

United States Bankruptcy Court,
M.D. Florida,
Tampa Division.

Sept. 29, 1992.

Andrew S. Forman, Brandon, Fla., for plaintiff.

Ian A. Horn, Clearwater, Fla., for defendant-counter-plaintiff.

Justin J. Tedrowe, Woodridge, Ill., for defendant.

## FINDINGS OF FACT, CONCLUSIONS OF LAW AND MEMORANDUM OPINION

ALEXANDER L. PASKAY, Chief Judge.

THIS IS a Chapter 7 liquidation case and the matter under consideration is the dischargeability *vel non* of an obligation imposed on Harold E. Baker (Debtor) by a Final Decree of Dissolution of Marriage. The Complaint, which was filed by the Debtor, is set forth in two counts. In Count I, the Debtor sought a determination that a provision of the divorce decree which dealt with the Debtor's ex-wife, Dorothy Baker (Ms. Baker), is in the nature of a property settlement and not maintenance and therefore, is within the overall protective provisions of the general bankruptcy discharge. Count II sought injunctive relief and was based on the Debtor's contention that Ms. Baker violated the permanent injunction issued in connection with the Debtor's discharge by filing a Motion for Contempt in the Illinois State Court. Shortly after filing the Complaint, the Debtor also filed a Motion and sought contempt (sic) for the alleged violation of the discharge by Ms. Baker.

In response to the Complaint, instead of filing an Answer, Ms. Baker filed a pleading entitled "Complaint Objecting to Dischargeability of Alleged Debt to Dorothy A. Baker, Former Spouse and Objection thereto" (sic). At the conclusion of the

duly scheduled pre-trial conference, this Court entered an Order dismissing the pleading filed by Ms. Baker without prejudice to her to file a Counterclaim. On November 19, 1991, this Court entered an Order denying the Debtor's Motion For Contempt as the Debtor no longer wished to proceed with the Motion.

On December 9, 1991, Ms. Baker filed an Amended Answer, Amended Counterclaim for Determination of Non–Dischargeability and Request for Equitable Relief. In her Counter-claim Ms. Baker set forth six separate claims.

The claim in Count I is based on alleged fraud pursuant to § 523(a)(2)(A); Count II is based on fraud while acting in a fiduciary capacity pursuant to § 523(a)(4); Count III is based on larceny claimed to be non-dischargeable by virtue of § 523(a)(4); Count IV is based on embezzlement claimed to be nondischargeable by virtue of § 523(a)(4); Count V is based on § 523(a)(5) and lastly, Count VI is based on an alleged willful, malicious injury claimed to be non-dischargeable by virtue of § 523(a)(6). In connection with Counts IV and VI, Ms. Baker also sought the imposition of a constructive trust on any and all monies derived from property of Ms. Baker which were in the possession of the Debtor on December 18, 1991.

The Debtor filed an Answer (sic) to Count V of the Amended Counterclaim and a Motion to Dismiss challenging the viability of the claims in Counts I, II, III, IV and VI of the Amended Counterclaim. On January 23, 1992, this Court entered an Order dismissing the entire Amended Counterclaim. The matter was then scheduled for final evidentiary hearing to consider the limited issue whether or not certain provisions contained in the Marital Settlement Agreement (Agreement) dated November 27, 1984, incorporated in a Judgment of Dissolution entered by the Circuit Court of the 18th Judicial Circuit of the State of Illinois on December 26, 1984, which dissolved the marriage of the Debtor and Ms. Baker, are in the nature of alimony or instead represent a property settlement.

The facts relevant to the resolution of the issues under consideration as established at the final evidentiary hearing are basically without dispute and can be briefly summarized as follows.

The Debtor and Ms. Baker were married in Minneapolis, Minnesota in May, 1956 and on September 20, 1958, the Debtor obtained employment with Eastern Air Lines (Eastern) as a reservation sales agent. Eastern maintained for its employees two separate retirement savings programs, all funded by Eastern. One, which is referred to as a variable annuity, gave employees an option upon retirement to receive a lump sum distribution of their vested interest and also provided for a fixed retirement pay, albeit in decreasing amounts beginning with $1500, decreasing to $1200 and ultimately to $825, which then remained stable and would be paid to the employee during his lifetime.

During the marriage, which was the Debtor's second marriage, two children were born. While Ms. Baker's education is limited to a high school diploma, she also received training and worked from time to time as a hairdresser and manicurist, but only earned $4.00 an hour. The parties were married for 28 years and at the time of the divorce Ms. Baker was 51 years old. The Debtor retired in 1990 and immediately became eligible for his retirement benefits. It is without doubt that the Debtor elected to receive his vested interest in the variable annuity program and in September, 1990, in full satisfaction of this Plan, received in excess of $12,500, according to information furnished by Eastern as of July 20, 1991.

On or about October 27, 1983, the Debtor and Ms. Baker separated and on November 27, 1984, Ms. Baker filed a petition for dissolution of marriage. Both parties were represented by counsel. It is without doubt that the Agreement which was incorporated in the final decree dissolving the marriage was drafted by Ms. Baker's attorney. This is the document which is the basis in the controversy involved in this adversary proceeding. The Agreement executed on November 27, 1984 is an extensive document consisting of 16 pages and

outlines in great detail all possible issues relevant to the determination of the rights of the parties after the divorce.

In a section entitled "Grounds for the Agreement," the Agreement sets forth that it was executed freely, knowingly, and voluntarily, and it is the intention of the parties that this shall be a comprehensive settlement of all their respective rights. Paragraph 4 of the Agreement entitled "Maintenance," provides that Ms. Baker shall receive rehabilitative maintenance of $400.00 monthly on the first day of each month for a period of 24 consecutive months following the effective date of the Agreement commencing December 1, 1984. In the last paragraph of this subtitle, the Agreement provides that with the exception of the rehabilitative maintenance, the parties "shall mutually waive and relinquish any right or interest each may have in maintenance from the other." There is no provision under the maintenance section dealing with retirement benefits which are involved in this controversy.

Following the maintenance section, the Agreement outlines an extensive property settlement dealing with the marital properties and debts. After the maintenance section, the remaining topic headings are as follows: "Property Settlement," "Furniture and Furnishings," "Bank Accounts," "Automobiles," "Miscellaneous Personal Property," "Retirement Benefits," "Debts," "Counsel Fees," and several other miscellaneous provisions. It should be evident from the foregoing that this Agreement is extremely confusing, but when considering the document as a whole, it appears that the entire latter portion of the Agreement concerns a division of the parties' properties and debts.

The section of the Agreement discussing the Debtor's retirement benefits provides that at the time the Debtor elects to retire and thus become eligible for pension and profit sharing annuity benefits, the husband shall pay to the wife 50% of his retirement pension and profit sharing annuity benefits accrued as of the date of the dissolution of the marriage. The Agreement further provides that within 30 days of the effective date, the husband has an obligation to inform the Plan administrator of its various retirement plan and institute a timely payment of the above percentage of benefits to the wife.

Based on the facts as recited, it is the Debtor's contention that the provisions in the Agreement which deal with the Debtor's retirement benefits are in the nature of a property settlement and not alimony and support and, therefore, are within the overall protective provision of the bankruptcy discharge. The exception to discharge concerning marital obligations is dealt with in § 523(a)(5) of the Bankruptcy Code. This Section provides as follows:

§ 523. Exceptions to discharge.

(a) A discharge under section 727, 1141, 1228(a), 1228(b), or 1328(b) of this title does not discharge an individual debtor from any debt ...

(5) to a spouse, former spouse, or child of the debtor, for alimony to, maintenance for, or support of such spouse or child, in connection with a separation agreement, determination made in accordance with State or territorial law by a governmental unit, or property settlement agreement, but not to the extent that

.    .    .    .    .

(B) such debt includes a liability designated as alimony, maintenance, or support, unless such liability is actually in the nature of alimony, maintenance, or support.

It should be noted from the outset that the provisions dealing with dischargeability were designed to give the Debtor a fresh start in life. As stated by the Supreme Court in *Lines v. Frederick,* 400 U.S. 18, 91 S.Ct. 113, 27 L.Ed.2d 124 (1970), bankruptcy legislation was designed to give a debtor a "new opportunity in life and a clear field for future effort unhampered by the pressure and discouragement of pre-existing debt," citing *Local Loan Company v. Hunt,* 292 U.S. 234, 54 S.Ct. 695, 78 L.Ed. 1230 (1934).

The question whether a particular obligation is "actually in the nature of ali-

mony, maintenance or support" is a matter of federal law, not state law. *In re Harrell,* 754 F.2d 902 (11th Cir.1985). As such, this Court is not bound by the labels placed on the provisions of a settlement agreement. *Id.* However, this Court must give great deference to the state courts by avoiding incursions into family law matters out of consideration of court economy or judicial restraint. *Carver v. Carver,* 954 F.2d 1573, 1579 (11th Cir.1992); *citing, In re Mac Donald,* 755 F.2d 715 (9th Cir.1985).

In determining whether an award is in the nature of alimony or support, a court must consider whether the obligation appears to balance disparate incomes, whether the obligation is payable in installments or in a lump sum, whether there was an actual need for support at the time it was awarded, and whether there was a division of property and allocation of debts between the parties. *In re Pattie,* 112 B.R. 437 (Bankr.M.D.Fla.1990); *In re Hall,* 119 B.R. 272 (Bankr.M.D.Fla.1990); *In re Midnet,* 84 B.R. 776 (Bankr.M.D.Fla.1988); *In the Matter of Basile,* 44 B.R. 221 (Bankr. M.D.Fla.1984).

The difficulty in this particular case is that the Agreement which, as noted earlier, was prepared by Ms. Baker's attorney, George W. Willits, expressly waives any further claim for maintenance other than the provisions of the Agreement which awarded to her rehabilitative maintenance of $400.00 per month for a period of 24 consecutive months. Moreover, the provision dealing with the Debtor's right to retirement benefits was placed in a section of the Agreement dealing with the division of the parties' property and debts. For these reasons, this Court is satisfied that the obligation in question is in the nature of a property settlement and, therefore, dischargeable.

A separate Final Judgment determining the property settlement obligation to be dischargeable pursuant to 11 U.S.C. § 523(a)(5) shall be entered in favor of the Plaintiff.