**In re Peter TZILVELIS a/k/a Peter Vilis a/k/a Petros Tzilvelis a/k/a Petros Vilis a/k/a Peter Tsivelis, Debtor.**

**Claude Evangelista, Plaintiff,**

**v.**

**Peter Tzilvelis a/k/a Peter Vilis a/k/a Petros Tzilvelis a/k/a Petros Vilis a/k/a Peter Tsivelis, Defendant.**

**Bankruptcy No. 03–08097–9P7.
Adversary No. 03–679.**

United States Bankruptcy Court,
M.D. Florida,
Ft. Myers Division.

June 9, 2004.

Edward R. Miller, Miller and Hollander, Naples, FL, for Debtor.

Richard J. Hollander, Miller and Hollander, Naples, FL, for Debtor and Defendant.

Richard C. Agins, New York, NY, Robert E. Tardif, Jr., Attorney, Ft. Myers, FL, for trustee.

Jeffrey W. Leasure, Jeffrey W. Leasure, PA, Fort Myers, FL, for Plaintiff.

## *FINDINGS OF FACT, CONCLUSIONS OF LAW AND MEMORANDUM OPINION*

ALEXANDER L. PASKAY, Chief Judge.

The matter under consideration in this Chapter 7 case of Peter Tzilvelis (Debtor) is a challenge by Claude Evangelista (Evangelista) of the Debtor's right to the protection of the general discharge. The claim for relief of Evangelista is based on the allegation set forth in his Complaint that the Debtor transferred property within one year of filing his Petition for Relief with the intent to hinder, delay or defraud a creditor.

In due course, the Debtor filed his Answer to the Complaint setting forth certain admissions but specifically denying that he did transfer the property in question with the intent to hinder, delay or defraud Evangelista. The facts relevant to the issue under consideration, as established at the final evidentiary hearing, are as follows:

Radni Davoodi (Davoodi) and Matt Patisso (Patisso) operated, at the time relevant, a title insurance business as a partnership under the name First–Class Abstract in the State of New York. As part of the business, they reviewed and purchased foreclosure and lis pendens lists from a company called Profile Publishing. Patisso was regularly buying distressed real estate. In addition, Patisso operated Liquid Brick, Inc. as a real estate investment firm and New Millennium Capital, as a mortgage brokerage firm.

From the list, they learned that certain property located in Wantagh Long Island, which was owned by the Debtor, was on the list of property that was vacant. On June 7, 2002, Davoodi sent a certified letter to the Debtor, telling him that they had found out that there was a lis pendens on the property and that they wanted to find out if he was interested in selling the property. (Db.Ex. A). The Debtor responded to this letter by calling Davoodi and told him if they could do anything with the property. Davoodi responded that he would talk to Patisso.

On July 25, 2002, Davoodi sent a cover letter on the stationary of New Millennium to the Debtor and included a Residential Sales Contract for the sale of the property. (Pl. Exs. 1 & 2). The Residential Sales Contract was dated June 1, 2002, although it appears that letter was dated July 25, 2002. On June 24, 2002, the Debtor signed a document prepared by the office of Patisso entitled "CONSIDERATION AGREEMENT/BUY–OUT AGREEMENT DOCUMENT," dated June 24, 2002 (Agreement). (Db.Ex. C). In the Agreement, signed by the Debtor, Patisso agreed to pay the Debtor $20,000.00 for a Deed for the property located at 3716 Jules Lane, Wantagh, New York. The Agreement further provided that the Debtor would receive the amount stated above under the following conditions:

> Paragraph 2: Any and all creditors who hold valid liens or claims against the property shall be negotiated by Matt Patisso to an acceptable settlement price.

Paragraph 3: No creditor shall have knowledge that Mr. Tzivelis is receiving cash or certified funds as consideration for the DEED, as this would jeopardize the deal and reduce the chances of satisfactory negotiations to occur.

Paragraph 4: Mr. Tzilvelis shall not speak to the creditors holding valid claims on the property with respect to the fact that he is receiving cash or certified funds to transfer his interest in the property.

(Agreement, ¶s 2, 3, & 4). It is clear and fully supported by the record that these paragraph quoted above were inserted by Patisso. They were inserted for the express purpose of assisting Patisso in his attempt to negotiate with the State of New York and the IRS, both of whom hade perfected tax liens on the property he was to purchase from the Debtor.

On July 31, 2002, the Debtor also signed an ADDENDUM to CONSIDERATION AGREEMENT (Addendum), dated June 22, 2002. (Pl.Ex. 4). This Addendum did not change any of the substantive provisions of the June 22nd Agreement. It did increase the amount paid to the Debtor from $20,000 to $25,000 and it also dealt with the procedure to close the transaction. It is admitted that the transaction closed and the escrow agent disbursed the $25,000.00 when the Debtor delivered the Deed to the property. (Pl.Ex. 7 & 8).

As noted above, the record further reveals that there were already two tax liens encumbering the property, one held by the United States for two federal tax liens, recorded on October 19, 1995, securing an amount of $9,495.83 and another recorded on January 19, 1996, securing an amount of $9,146.51. The other liens were held by the State of New York in the amounts of $266,312.09, $135,799.90, and $3,870.63. It appears that this lien was released by the State of New York on July 23, 2002, upon receipt of $1,000.00 paid at the closing.

The release was contingent upon the sale of the property to Patisso.

On July 11, 2002, the IRS advised the Debtor that the tax lien would be released upon payment of $36,260.25, not later than July 30, 2002. Even though there is no documentary evidence that the amount required for the release of the tax lien was in fact paid, it is fair to assume that it was. Be as it may, release of this tax lien is not relevant to the issue under consideration.

It appears that in November of 1998, Evangelista filed a state court lawsuit against VLS Enterprises, Corp.; I Love You Marketing, Ltd. (d/b/a Velis Associates); Peter Velis (a/k/a Peter Tzivelis and Peter Tsivelis); and Jane Velis (a/k/a Jane Tzivelis and Jane Tsivelis), in the Supreme Court of the State of New York, County of New York. It appears that after the defendants were served with the Complaint, they filed their respective answers but that the court granted the plaintiff's motion for entry of default and struck the defendants' answer. On July 23, 2002, a Default Judgment was entered and awarded Evangelista the sum of $12,791,581.30, plus interest in the amount of $69,389.95, and $1,059.00 for costs, or a total of $12,862,030.25, against some of the defendants, including the Debtor.

The Debtor, even prior to the transactions just described, moved to Florida and on April 21, 2003, filed his Voluntary Petition for Relief under Chapter 7. In his Summary of Schedules, he scheduled the total of unsecured priority debts as $650,000.00 and general unsecured debts as $12,886,799.00.

■ These are the facts relevant to the single issue presented to this Court's consideration which is whether the Debtor transferred property of the estate within one year, with intent to hinder, delay or defraud Evangelista, conduct which is condemned by Section 727(a)(2)(A) of the Code.

It is well established that the provisions of the discharge were designed to assist a financially distressed debtor to give a fresh start in life unencumbered from the financial vicissitudes of the debtor's past. *Lines v. Frederick*, 400 U.S. 18, 91 S.Ct. 113, 27 L.Ed.2d 124 (1970). Thus, these provisions of the Code should be construed in favor of the debtor and strictly against the one who challenges the debtor's right to the discharge. *In re Muscatell*, 113 B.R. 72 (Bankr.M.D.Fla.1990). It should be noted at the outset that while the burden of proof is on the party challenging a debtor's right to benefits of the general discharge, F.R.B.P. 4005, the standard of proof is no longer the clear and convincing evidence but a mere preponderance is sufficient to prevail on the objections. *Grogan v. Garner*, 498 U.S. 279, 111 S.Ct. 654, 112 L.Ed.2d 755 (1991)(dicta); *In re Keeney*, 227 F.3d 679 (6th Cir. 2000); *In re Scott*, 172 F.3d 959 (7th Cir. 1999); *In re Brown*, 108 F.3d 1290 (10th Cir.1997).

In order to establish a viable claim under Section 727(a)(2)(A), the movant has the burden to prove that the transfer occurred within one year preceding the commencement of the case and that debtor had the *intent* to hinder, delay or defraud creditors. 11 U.S.C. § 727(a)(2)(A). The intent of a debtor, of course, can seldom be established by direct evidence but extrinsic evidence may warrant the finding that a debtor did in fact act with intent when the transfers in question were accomplished. The hallmark of fraudulent intent has been considered by numerous courts and it is generally agreed that they are the following: (1) lack of adequate consideration for the transfer; (2) relationship between the parties; (3) retention of benefit of the property in question by the debtor even though property has ostensibly been transferred, this is the so-called "sham" transfer; (4) the existence of cumulative effect or pattern or series of transactions and the course of conduct incurring debt; and, most importantly (5) pendency or threat of suit by creditors. *In re Gollomp*, 198 B.R. 433 (S.D.N.Y.1996).

The thrust of the plaintiff's case is based upon the language in the Agreement, as noted above, that directs the Debtor from discussing the fact that he would receive any amount of money to his creditors. However, it is without dispute that Patisso drafted the Agreement and the Addendum and that the express language dealing with the non-communications to creditors of the Debtor was drafted for the benefit of Patisso, not for the benefit of the Debtor. Patisso testified that this provision was inserted so as not to hamper his efforts to negotiate down the liens on the property.

In light of the uncontroverted evidence, this Court is satisfied that based upon the record and the case law dealing with Section 727(a)(2)(A), the record is devoid of any competent evidence to establish that the Debtor had the requisite intent to hinder, delay or defraud Evangelista.

Accordingly, it is

ORDERED, ADJUDGED AND DECREED that this Complaint be, and the same is hereby, dismissed with prejudice.

A separate final judgment shall be entered in accordance with the foregoing.