In the Matter of Grant & Betty Jean
RICHMOND, Debtors.

HOUSEHOLD FINANCE CORP.,
Plaintiff,

v.

Grant & Betty Jean RICHMOND,
Defendants.

Bankruptcy No. 81–266.
Adv. No. 81–151.

United States Bankruptcy Court,
M.D. Florida,
Tampa Division.

April 15, 1983.

Leonard L. Liszewski, Fort Myers, Fla., for defendants.

Richard T. Cotter, Fort Myers, Fla., for plaintiff.

## FINDINGS OF FACT, CONCLUSIONS OF LAW AND MEMORANDUM OPINION

ALEXANDER L. PASKAY, Chief Judge.

THIS IS a Chapter 7 case and the matter under consideration is a proceeding arising under Title 11 U.S.C. The jurisdiction of this Court is based on Emergency Local Rule (c)(1).

This adversary proceeding came on for final evidentiary hearing to determine the dischargeability, vel non, of the debt owed to Household Finance Corporation (Household) by Grant and Betty Jean Richmond, the Debtors in the above-styled Chapter 7 case. Household seeks to except from discharge the debt owed it by Grant and Betty Jean Richmond pursuant to 11 U.S.C. § 523(a)(2)(A) and § 523(a)(2)(B).

The relevant facts adduced at trial are as follows:

On October 7, 1977, Robin Richmond, the Debtor's daughter, borrowed $2,500 from Household. The Debtors co-signed the promissory note. Robin was unable to make payments on the note as they became due and her parents made some, but not all, payments on her behalf.

In July, 1978, Robin married James Bryant. That same month Household renewed the $2,500 loan to Robin which was in default at that time. On the second note, Robin and James Bryant were the primary obligors and the Debtors co-signed. This note also went into default and Household called the note.

Betty Jean Richmond, the mother of Robin, was told by Household that if she and her husband would agree to renew the loan in their own names, Household would release the obligation of their daughter and son-in-law. On April 5, 1979, Betty Jean Richmond went to the office of Household in Ft. Myers, Florida where she was given new loan application documents consisting of a financial statement and a promissory note. Betty Jean Richmond left the office with the loan application documents and went to a nearby coffee shop where she filled out the financial statement and signed both her own name and her husband's name to the financial statement and promissory note. When Betty Jean Richmond returned to the Household office, she presented the completed loan application to a loan officer. She did not inform anyone

that she had signed her husband's name to the documents. It appears from the documents (Pl's Exh. # 1 and # 2) that Betty Jean Richmond signed the two names, her own and her husband's, in two different handwriting styles in such a manner that it would not be apparent to a reasonable observer that one person had signed both names.

It is without dispute that Grant Richmond had no knowledge of the April 5, 1979 loan application; that he never authorized his wife to sign his name on the loan application, and that had he known, he would have refused to become primarily liable on the $2,500 obligation originally incurred by his daughter, Robin.

Betty Jean Richmond testified that she renewed the loan and signed her husband's name on the application so that Household would not take legal action against herself, her husband, her daughter and her son-in-law. She further testified that she handles the financial affairs of the family and that she had signed her husband's paychecks and other documents on his behalf in the past. She believed that Household would have approved the loan with or without her husband's signature because she believed he continued to be obligated on the original note.

It is the contention of Household that in addition to signing her husband's name without authorization, Betty Jean Richmond also submitted a materially false financial statement in that she grossly understated her outstanding debts. There is no question that Mrs. Richmond knew that she and her husband owed debts in excess of $58,000, yet she only disclosed debts totalling $12,727 on the loan application, although there is testimony in this case that the loan officer instructed Mrs. Richmond to "list only the main debts" and that the loan officer, in fact, knew of other debts not listed on the financial statement submitted by Mrs. Richmond.

Household proposes two theories in seeking to except this $2,500 debt from the Debtor's general Chapter 7 discharge. Household first contends that the debt is non-dischargeable ·pursuant to Title 11 U.S.C. § 523(a)(2)(A) which provides in relevant part as follows:

"(a) A discharge under section 727 . . . of this title does not discharge an individual debtor from any debtor—

(2) for obtaining . . . an extension, renewal, or refinance of credit, by—

(A) false pretenses, a false representation, or actual fraud, other than a statement respecting the debtor's or an insider's financial condition."

Household contends that Mrs. Richmond, by signing her husband's name to the promissory note without his authorization, obtained refinancing of credit by false pretenses within the meaning of § 523(a)(2)(A). Household would not have renewed the note in the name of Betty Jean Richmond alone and, therefore, the false pretense that both Debtors would be liable on the note was a significant factor in Household's willingness to refinance the original obligation.

■ In order to sustain a claim of non-dischargeability under § 523(a)(2)(A), it is the burden of the Plaintiff to establish the following with the requisite degree of proof:

(1) the debtor made the representations;

(2) that at the time he knew they were false;

(3) that he made them with the intention and purpose of deceiving the creditor;

(4) that the creditor relied on such representations; and

(5) that the creditor sustained the alleged loss and damage as the proximate result of the representations having been made.

*Newmark v. National Bank of North America (In re Newmark),* 20 B.R. 842, 853–54 (Bkrtcy.E.D.N.Y.1982); *See also, Public Finance Corp. v. Taylor (In re Taylor),* 514 F.2d 1370, 1373 (9th Cir.1975); *Sweet v. Ritter Finance Co. (In re Sweet),* 263 F.Supp. 540, 543 (W.D.Va.1967).

Applying the above five-part test to the conduct of Betty Jean Richmond, the Court

558

must first determine whether there was any false pretense. "False pretense" generally denotes a misrepresentation implied from purposeful conduct creating a false impression. *H.C. Prange Co. v. Schnore (In re Schnore)*, 13 B.R. 249, 251 (Bkrtcy.W.D. Wis.1981). The conduct of Mrs. Richmond, in signing her husband's name to the financial statement and promissory note, created the false impression that her husband had signed the documents. It obviously cannot be disputed that at the time she signed her husband's name, Mrs. Richmond knew that the pretense that her husband had signed the note and financial statement was false.

■ Whether Mrs. Richmond intended to deceive Household by her action presents a more difficult question. To except a debt from discharge under § 523(a)(2)(A), the Debtor's conduct must be intentional, and mere reckless or negligent conduct which creates a false impression is insufficient. *C.O.T.C.O. Gasoline, Inc. v. Jenes (In re Jenes)*, 18 B.R. 405, 407 (Bkrtcy.S.D.Fla. 1981). The primary purpose of bankruptcy law is to relieve the debtor's burden of indebtedness and to provide him with a fresh start. *Perez v. Campbell*, 402 U.S. 637, 648, 91 S.Ct. 1704, 1710, 29 L.Ed.2d 233 (1971). The courts, therefore, narrowly construe exceptions to discharge against the creditor and in favor of the debtor. *Lines v. Frederick*, 400 U.S. 18, 20, 91 S.Ct. 113, 114, 27 L.Ed.2d 124 (1970) (per curiam); *Gleason v. Thaw*, 236 U.S. 558, 562, 35 S.Ct. 287, 289, 59 L.Ed. 717 (1915). Accordingly, the creditor bears the burden of demonstrating that the debt owed to him falls within one of the statutory exceptions. *Murphy & Robinson Investment Co. v. Cross (In re Cross)*, 666 F.2d 873, 880 (5th Cir.1982). Where as in the case at bar, the creditor seeks an exception to discharge based on allegations of fraud, misrepresentation, or false pretenses, the creditor has the burden of establishing his claim by "clear and convincing evidence." *National Bank of North America v. Newmark (In re Newmark)*, 20 B.R. 842, 853 (Bkrtcy.E.D.N.Y.1982); *Brauman Paper Co. v. Neumann (In re Neumann)*, 13 B.R. 128, 130 (Bkrtcy. E.D.Wis.1981). While intent may not be presumed, the requisite degree of intent to deceive may be inferred from the "totality of the circumstances." *In re Newmark*, 20 B.R. at 858 and cases cited therein.

■ In the present case, Mrs. Richmond does not admit an intent to deceive, but rather contends that she had authority to sign her husband's name based on the fact that she had, in the past, signed his name to his paychecks without his objection. Absent admission of intent to deceive, the Court must look to the "totality of the circumstances" to determine whether or not the element of intent has been satisfied. The evidence and testimony at trial reveals that Mrs. Richmond took the loan application forms out of Household's office after being informed that both her signature and her husband's would be required to refinance the note. She never advised anyone at Household that she considered herself to have authority to sign on her husband's behalf. The two signatures were in markedly different handwriting styles from which the loan officer could reasonably infer that Grant and Betty Jean Richmond each signed his and her own name. In light of the foregoing conduct, the Court is satisfied that the Plaintiff met its burden of proving intent to deceive.

■ Household has also met its burden of establishing the fourth and fifth elements; it relied on the false pretense and that it sustained a loss as a result. There was testimony by Ken Walls, Manager of Household, that Household relieved Robin and James Bryant of their obligation, because it was understood that Grant and Betty Jean Richmond would be primarily liable on the note. Household would not have renewed the note, releasing Robin and James Bryant, if Betty Jean Richmond had informed them that she alone would be liable.

As to Betty Jean Richmond, there remains only one matter for consideration: whether she, by renewing the note in her own name and becoming primarily rather than secondarily liable for repayment, "obtained money" within the meaning of

§ 523(a)(2). There are no cases under the Bankruptcy Code directly addressing this element, however, there are two lines of cases interpreting § 17(a)(2) of the Bankruptcy Act which was the precursor to § 523(a)(2)(A) of the Bankruptcy Code. According to one view, unless the debtor actually obtained money, property or a renewal of credit for himself through fraud, false misrepresentation, or false pretenses the debt remains dischargeable. *See Rudstrom v. Sheridan,* 122 Minn. 262, 142 N.W. 313, 314 (1913). The better view, however, appears to be that if the Debtor obtains a benefit through his deception, the debt is dischargeable. *See, Hyland v. Fink,* 178 N.Y.Supp. 114, 115 (1919); 3 *Collier on Bankruptcy,* ¶ 523.08[1] (15th ed. 1982).

█ Here Robin and James Bryant were obviously not able to make payments under the previous notes. Mrs. Richmond had been informed by Household that the note would be called and that Mr. and Mrs. Richmond, as co-signers, would be required to pay the amount owing. Mrs. Richmond, therefore, clearly obtained a benefit from the renewal of credit which was obtained through her deception.

This Court is satisfied that the Plaintiff met its burden of establishing that the debt owed it by Mrs. Richmond is non-dischargeable pursuant to § 523(a)(2)(A) and, therefore, the Court need not address whether or not the debt is non-dischargeable pursuant to § 523(a)(2)(B).

█ The Court is also satisfied that Grant Richmond did not sign the note and did not hold his wife out to Household as one having authority to sign on his behalf, and Grant Richmond, therefore, is not liable on the note. The Plaintiff's Complaint, therefore, should be dismissed as to him.

A separate final judgment will be entered in accordance with the foregoing.