**In re Charles Michael ENGLISH, Debtor.**

**T.R.C., INC., Plaintiff,**

v.

**Charles Michael ENGLISH, Debtor.**

**Bankruptcy No. 89–00144–BKC–AJC.**
**Adv. No. 89–0130–BKC–AJC–A.**

United States Bankruptcy Court,
S.D. Florida.

Oct. 23, 1990.

**800**

Richard Siegmeister, Law offices of Chad Pugatch, Fort Lauderdale, Fla., for debtor.

Robert A. Mark, Stearns Weaver Miller Weissler Alhadeff & Sitterson, Miami, Fla., for T.R.C., Inc.

## FINDINGS OF FACT AND CONCLUSIONS OF LAW

A. JAY CRISTOL, Bankruptcy Judge.

This cause came before the court on July 23, 1990 on the complaint of T.R.C., Inc. for non-dischargeability of a debt in accordance with 11 U.S.C. § 523(a)(6). The debt was an award against the debtor in the Maryland Circuit Court for tortious interference with TRC's contract with the Ta–Yang Yacht Building Company. This award included punitive damages and a finding of malicious intent. The cause was prevented from a finding of *res judicata* by two factors: (1) the issue of a different standard of malicious intent in the Maryland Court, and (2) the lower standard of proof in the Maryland case from that laid down by the Eleventh Circuit for a § 523(a)(6) case. *Chrysler Credit Corporation v. Rebhan,* 842 F.2d 1257, 1262 (11th Cir.1988) (*citing Matter of Wise,* 6 B.R. 867 (Bankr.M.D.Fla.1980). At pretrial conference the parties agreed that the court would review the transcript of the Maryland trial and that further hearings would be unnecessary.

Having reviewed the Maryland transcript and the exhibits submitted by counsel, heard and considered the arguments of the parties, and being fully advised in the premises, the court makes the following findings of fact and conclusions of law. This is a core matter, and the court has jurisdiction under 28 U.S.C. §§ 157 and 1334, and 11 U.S.C. § 523. For ease of analysis, the following opinion is labled with headings. The headings are not definitive, and to the extent that the subject matter conflicts with the heading, the subject matter controls. In like manner, should any finding of fact be included with the conclusions of law, or vice versa, the nature of the finding, and not the label, controls.

## FINDINGS OF FACT

The plaintiff herein is T.R.C., Inc. [TRC] which is a corporation wholly owned by Thomas R. Cooper [Cooper], a resident of Annapolis, Md. Mr. Cooper also owns another corporation, Sextant Yacht Sales, Inc.

[Sextant]. To some extent, witnesses tended to refer to these three entities interchangeably.

Charles Michael English [English] is the defendant in this action and was co-defendant with the Ta–Yang Yacht Building Company in the Maryland Circuit Court action, *T.R.C., Inc. v. Ta–Yang Yacht Building Company, Ltd.*, Civil Action 1111288, in the Circuit Court in and for Anne Arundel County. A jury verdict was entered. English was found liable for intentionally interfering with a contract between TRC and the Ta–Yang Yacht Building Company, Ltd. [Ta–Yang]. The verdict included an award of punitive damages, for which the jury had to find malice. The jury instructions stated that the requirement for malice could be satisfied by actual or implied malice. The standard of proof for both the tort and the punitive damages was a preponderance of the evidence.

English has sold yachts since 1969, and Ta–Yang's product [Tayana] since 1975. In 1980 he established himself in Annapolis, Maryland, and in 1983 entered into a written agreement with Cooper, who also sold Tayana yachts. Cooper considered English a salesman; English characterized the arrangement as a "joint venture." This arrangement lasted approximately a year, and ended in the spring of 1984 with a verbal agreement between Cooper, English, and Ta–Yang that the two sellers would split the line, with Cooper having the rights to sell the Tayana 37 among others, and English having rights to the "Trunk Cabin" 42, in which he had a special interest, and the Tayana 52. The details of this agreement were not clear to the court. It apparently was in the nature of a "gentlemen's agreement" and there is some evidence that it included an agreement that neither seller would seek an exclusivity contract with the manufacturer. English testified that Ta–Yang subsequently offered him an exclusive dealer agreement or distributorship which he refused because of this obligation. The principals of Ta–Yang denied offering English an exclusive distributorship. Various negotiations were had among these parties throughout the spring of 1984, culminating with a written distributorship agreement between Ta–Yang and Cooper, signed July 11, 1984. This agreement was for a one year term, after which it was to be signed again, and it provided exclusivity for Cooper from South Carolina to New York, with New York designated as a "grey area." The testimony of the principals of Ta–Yang was not very dynamic and candid in reference to this contract, at times bordering on the evasive. This testimony casts doubt on their credibility on the issue of their entry into exclusive deals. English did not sign the agreement, and claims that he was unaware of it until after he was served process in the state court action.

English has filed this Chapter 7 case, and seeks to discharge his debts, including the jury award of $158,768.68 plus interest on which he was held jointly and severally liable with Ta–Yang, and the $100,000 in punitive damages for which he is solely responsible. There is evidence that English paid $20,000 on this debt prior to filing bankruptcy.

The state court judge expressed doubts about the sufficiency of the evidence before letting the case go to the jury (Transcript IV, p. 22), and entered a remittitur of $100,000 of the original jury award of $200,000 in punitive damages.

## CONCLUSIONS OF LAW

The court's decision that this debt is dischargeable depends on two elements of the proceedings in the Maryland Circuit Court which were not proven by clear and convincing evidence: damages to the plaintiff, and willful and malicious intent on the part of the debtor.

There is no question but that the party seeking to except a debt from discharge must prove the willfulness and maliciousness of the act by clear and convincing evidence. *Chrysler Credit Corp. v. Rebhan*, 842 F.2d 1257, 1261 (11th Cir. 1988). The cases under § 523(a)(6) have tended to analyze the term "willful and malicious" as a two pronged test, both elements of which must be met to except discharge. The Eleventh Circuit, to whom

the court must defer, has followed this tendancy.

## MALICIOUS

■ Despite the language of congressional intent to overrule the *Tinker v. Colwell*[1] case and the strong policy of providing debtors with a fresh start, the Eleventh Circuit may have returned to the reckless disregard standard of malice first announced in *Tinker v. Colwell*, 193 U.S. 473, 24 S.Ct. 505, 48 L.Ed. 754 (1904). The reasoning is complicated and the logic confusing because of the ambiguity of *Tinker v. Colwell* and the similarity and overlap of meaning of the terms willful and malicious. The preferred alternative of the several lines of cases on this issue was announced in this circuit in *Chrysler Credit Corporation v. Rebhan*. This holding is that the congressional language only applies to the element of "willful," and that willful is satisfied by an act intentionally done. 842 F.2d at 1263, *citing United Bank of Southgate v. Nelson*, 35 B.R. 766, 774 (N.D.Ill.1983). The application of the *Rebhan* decision is not clear in the case *sub judice*. If the decision means that any act in the chain of causation, however innocent, can satisfy the willfulness element by being intentionally done, the *Rebhan* decision leaves us with the conclusion that the reckless disregard standard that Congress attempted to overrule has been re-established. This court feels that the better view, in light of expressed congressional intent, is the approach that it takes knowledge, without actual ill will, that an act will harm a creditor, and then acting in the face of that knowledge, to establish malice. *See Wisconsin Finance Co. v. Ries*, 22 B.R. 343 (Bankr.W.D.Wis.1982). But this court is bound by decisions of the Eleventh Circuit, and so must apply the rule of *Chrysler Credit Corporation v. Rebhan*, and the reckless disregard standard of malice. English does not meet this standard. The sale of a yacht is not an inherently danger-

ous act. Without some special knowledge, the sale of a yacht is not reckless, and so cannot meet a reckless disregard standard for implied malice. Nor has TRC proved actual malice. There is no evidence that English knew, believed, or thought that his acts would be harmful to a third party, since he had developed the sales leads himself. Without his work, there would be no accretion to anyone. TRC's losses are lost profits, on sales that they never made. There is no evidence that the sales would have ever been made without the efforts of English. The Maryland jury, applying the standard of a preponderance of the evidence and a presumption of harm to an exclusive dealer, reached the conclusion that English acted with malice. This court, having reviewed the entire trial transcript and exhibits, finds that it is not clearly convinced that English acted with malice. In fact, the court entertains serious doubt that the Maryland jury reached a proper conclusion on this issue, even on the lesser standard. But this is not an appellate court to the Maryland Circuit Court, nor is it necessary to reach that issue. We find, as a matter of both fact and law, that the evidence that English acted with malice is not clear and convincing.

## WILLFUL

■ In a similar analysis, the court is not convinced that English acted willfully. There is no doubt that he intentionally sold the yachts, and he had strong indications, if not certain knowledge, that Ta–Yang had some sort of agreement with TRC which impacted on their legal ability to sell him the Tayana 37, at least prior to July, 1985. *Tinker v. Colwell* speaks in terms of willfully performing a *malum in se*. "[W]e think a willful disregard of what one knows to be his duty, an act which is against good morals, and wrongful in and of itself, *and which necessarily causes injury* and is done intentionally, may be said to be done willfully and maliciously, so

---

1. "To the extent that *Tinker v. Colwell* [citations omitted] held that a less strict standard is intended, and to the extent that other cases have relied on *Tinker* to apply a 'reckless disregard' standard, they are overruled." Senate Report, No. 95–989. 95th Cong.2d Sess. (1978), 1978 U.S.Code Cong. & Admin.News 5787, 5865; House Report, No. 95–595, 95th Cong., 1st Sess. (1977), 1978 U.S.Code Cong. & Admin.News 5963, 6320.

as to come within the exception." 193 U.S. at 487, 24 S.Ct. at 509 (emphasis supplied). Selling a yacht is not a *malum in se.* Inducing a manufacturer to violate an exclusive distributorship may be, but inducing goes beyond the mere placing of an order. The manufacturer can and should enforce its own contracts for exclusivity. The court is troubled by Mr. Griffin's testimony that English knew that Ta–Yang would sell him the yachts whether or not they had an exclusive with Cooper. Given one scintilla of evidence of contemporary intent to harm Cooper or knowledge or belief on the part of English that harm might come of these acts, this issue might have gone the other way. The only evidence of contemporary intent or belief is in the testimony of English. English's testimony indicates that he felt that these were his customers, and that he attempted to obtain yachts for which he had orders from Cooper, who refused to supply them. Having sold them, he felt no obligation to convert his customers to another product. In his view, no harm came to Cooper, who was selling customers away from the Ta–Yang line. It is not clear whether Mr. English's yacht purchasers were individuals who had to have a Tayana 37 no matter who sold it to them, or those individuals who were going to buy from English no matter what he sold them. In the first alternative, the harm to TRC is manifest, in the second, it is equally clear that there is no harm at all. The burden was on TRC to prove with clear and convincing evidence that the debtor's acts were willful. By willful, this court does not mean a possibly harmless act, intentionally done. The act must be a breach of duty, which necessarily causes injury, and which is done intentionally. TRC has not carried this burden.

This analysis of "willful" is consistent with that of the Eleventh Circuit. In *Chrysler Credit Corp. v. Rebhan,* the conduct complained of was the crime of conversion. The Eleventh Circuit analyzed the intentional commission of a crime and found that conduct to be willful. The Circuit did not reach the issue in this case: the willfulness of possibly harmless non-criminal conduct, intentionally done.

DAMAGES

In Maryland there is a presumption in an exclusive contract that sales of the product would have gone to the agent with the contract. The court does not find it necessary to reach the issue of whether the presumption is binding on this court in a dischargeability hearing. We assume, without deciding, that the presumption is valid. There is, however, significant evidence to rebut the presumption, and little to support it. The Maryland jury only had to find damage more likely than not, and they had a legal presumption working in favor of damages. This court must find that the damage was caused by the debtor on a clear and convincing standard in order to find that the debt is non-dischargeable. In light of the evidence introduced by debtor that his contacts and sales techniques brought in the sales, and that the plaintiff actually refused to provide him product for these sales, we must conclude that the presumption of harm to Cooper is rebutted. It is certainly not evident on a clear and convincing standard that the actions of the debtor in bypassing the plaintiffs' exclusive contract with Ta–Yang actually caused damage to the plaintiff.

For the foregoing reasons, we find that English is entitled to discharge the award of the Maryland State Court in Anne Arundel County Civil Action Case Number 1111288. A Final Judgment will be entered in accordance with these Findings of Fact and Conclusions of Law.

DONE and ORDERED.