**NATIONAL TOUR ASSOCIATION, INC., Appellant,**

v.

**Sandra Scheitinger RODRIGUEZ, Appellee.**

**Bankruptcy No. 98–256–CIV–T–17C.**

United States Bankruptcy Court, M.D. Florida, Tampa Division.

July 8, 1998.

W. Keith Fendrick, Law Office of W. Keith Fendrick, Tampa, FL, Robert Maclin, III, Robert Maclin, III, P.A., Lexington, NJ, for National Tour Association.

Larry Michael Foyle, Kass Hodges, P.A., Tampa, FL, Douglas J. Burns, Robinson, Steagall, Silvers, Bornstein, Govan & Fusco, for Sandra Scheitinger Rodriguez.

***ORDER ON THE APPEAL FROM THE UNITED STATES BANKRUPTCY COURT FOR THE MIDDLE DISTRICT OF FLORIDA***

ELIZABETH A. KOVACHEVICH, District Judge.

This cause is before the Court on appeal from the Final Order of the United States Bankruptcy Court for the Middle District of Florida granting Appellee's Rule 52(c) Motion and denying Appellant's Renewed Mo-

tion for Summary Judgment, entered on December 11, 1997, by Bankruptcy Judge Thomas E. Baynes, Jr.

## STANDARD OF REVIEW

Bankruptcy Rule 8013 provides that "findings of fact, whether based on oral or documentary evidence, shall not be set aside unless clearly erroneous, and due regard shall be given to the opportunity of the bankruptcy court to judge witnesses." However, if the Bankruptcy Court is silent or ambiguous about an outcome determinative fact, then this Court must remand the case back to the Bankruptcy Court for further review. *In re Chase & Sanborn Corp.*, 904 F.2d 588, 593 (11th Cir.1990). Appellant is also entitled to an independent *de novo* review of all conclusions of law and the legal significance accorded to the facts. *In re Bicoastal Corp.*, 125 B.R. 658 (M.D.Fla.1991).

## FACTS

The undisputed facts show that Appellant National Tour Association (hereinafter NTA) is a not-for-profit corporation organized under the laws of the State of Kentucky. NTA offers consumer protection for group tour deposits or prepayments in the event of a loss due to a tour operator's filing for bankruptcy. Appellee, Sandra Scheitinger Rodriguez (hereinafter debtor), and her corporation Great Connections Travel, Inc., (hereinafter Great Connections), were members of NTA.

Debtor solicited and organized travel arrangements and group tours through Great Connections. Debtor arranged for all of the components of a tour, including transportation, room accommodations, sightseeing, and dining. These tours were rarely broken down in cost for their respective components. Each consumer purchased a package deal that included all costs for travel. Consumers were required to place deposits with the debtor in order to secure their places on their respective tours. Deposits often included fees for trip cancellation insurance. Funds collected by Great Connections would be deposited into a general account for the agency. Funds from the general account were used for any business expense and, as an established course of business, funds were often used in this manner.

Debtor began the business Great Connections as a sole proprietor in 1980, and later incorporated in 1982. Debtor subsequently owned the corporation with another shareholder from 1983 until 1985 at which time Great Connections redeemed all shares with the exception of debtor's 50 shares. Debtor was then sole shareholder until October 1991. During 1991, Great Connections issues 50 shares to Thomas Chimera, making Chimera and debtor 50% shareholders.

Soon thereafter, on December 11, 1991, Great Connections filed for relief under Chapter 11 of the Bankruptcy Code. In that case, certain customers did not get to travel and were owed moneys. The case was converted to a Chapter 7 petition on March 16, 1992 and NTA purchased the consumers' claims and took assignments of the claims.

Appellant NTA filed a timely proof of claim for $99,764.62 which represents amounts it reimbursed to customers for losses. The Bankruptcy Court of the Middle District of Florida held that NTA had standing to bring an action for the claims it reimbursed. NTA brought an adversary proceeding against debtor under §§ 523(a)(2)(A), 523(a)(4), and 523(a)(6).

In an order dated August 25, 1994, the Bankruptcy Court found that NTA had not met its burden of proof and that no material fact remained with respect to the claim under § 523(a)(4). Debtor was granted summary judgment on this count. With respect to §§ 523(a)(2)(A) and 523(a)(6), the court found genuine issues of material fact existed on debtor's intent and denied summary judgment on those counts.

After the presentation of the evidence, the Bankruptcy Court issued a Final Order dated December 11, 1997 granting debtor's Rule 52(c) Motion and denying NTA's renewed Summary Judgment Motion. In this order, the court found no evidence of intent to defraud on the part of the debtor.

In the case at bar, this Court will discuss the issues raised by Appellant NTA in the order they appear in the Appellant's brief. (Docket No. 7).

## DISCUSSION

In recognition of the importance of the central purpose of the Bankruptcy Code to provide a "fresh start" for an honest and unfortunate debtor, exceptions to discharge are narrowly construed in favor of the debtor. *Lines v. Frederick*, 400 U.S. 18, 91 S.Ct. 113, 27 L.Ed.2d 124 (1970). A court is not required to weigh the evidence for or against a particular party when considering partial judgment under F.R.Civ.P. 52(c), but rather to determine whether the Plaintiff has met its burden of proof in establishing a *prima facie* case. *Caro–Galvan v. Curtis Richardson, Inc.*, 993 F.2d 1500 (11th Cir.1993).

### I. The Bankruptcy Court Did Not Err In Finding That Debtor Did Not Intend to Defraud Customers Under § 523(a)(2)(A).

Under § 523(a)(2)(A) and § 523(a)(6), the burden of proof, by a preponderance of the evidence, rests squarely on the Plaintiff until a *prima facie* case is made. *Grogan v. Garner*, 498 U.S. 279, 111 S.Ct. 654, 112 L.Ed.2d 755 (1991). Only after a *prima facie* case is made by the Plaintiff does the burden shift to the Defendant. *Id.*

Appellant NTA, objected to the debtor's discharge for bankruptcy based on 11 U.S.C. § 523(a)(2)(A), which states in part:

 (a) A discharge under 727, 1141, 1228(a), 1228(b), or 1328(b) of this title does not discharge an individual debtor from any debt . . .

 (2) for money, property, services, or an extension, renewal, or refinancing of credit, to the extent obtained by—

 (A) false pretenses, a false representation, or actual fraud, other than a statement respecting the debtor's or an insider's financial condition; . . .

To sustain an objection to discharge under § 523(a)(2)(A), the Plaintiff (NTA) is required to demonstrate all of the operating elements of its *prima facie* case: (1) false representation made with the intent to deceive creditors; (2) creditors' reliance on such representation; (3) the reliance was reasonably founded; and (4) the creditors sustained a loss as a result of the representa-

tion. *St. Laurent v. Ambrose*, 991 F.2d 672 (11th Cir.1993). The Bankruptcy Court found that while NTA had established a *prima facie* case regarding the second, third, and fourth elements of the fraud claim (Order dated August 25, 1994 at pp. 4–6), NTA failed to make a showing of fraudulent intent. (Final Order dated December 11, 1997).

Appellant argues that while fraudulent intent is a necessary element of a § 523(a)(2)(A) claim, it can be proved directly or inferred from the totality of the circumstances. *Household Finance Corp. v. Richmond*, 29 B.R. 555, 558 (Bankr.M.D.Fla. 1983). NTA claims that when the totality of the circumstances in this case are examined, Debtor's intent to defraud customers is "readily apparent". (Docket 7, p. 11). NTA alleges that Debtor knew at the time she solicited deposits from customers that the business was in financial difficulty. *Id.* Further, NTA alleges that the Debtor deposited (or caused to be deposited) moneys from customers into a general account from which her own personal expenses were paid. *Id.* NTA asserts that the Debtor had ultimate responsibility and control over the accounting methods within Great Connections, and she "pushed to collect" moneys from customers on the eve of the bankruptcy filing. *Id.* Finally, NTA claims that when viewed in their totality, the circumstances point to overwhelming evidence of the Debtor's deceptive and fraudulent conduct. *Id.* The Bankruptcy Court, however, failed to find any evidence in the record of Debtor's fraudulent intent.

This Court has taken great strides in the case at bar to review *all* of the evidence on record including three boxes of depositions and trial transcripts (over 1200 pages), 515 individual complaints (many assigned to NTA), brochures, Bankruptcy Court Orders, and various motions by both parties. After reviewing the evidence in its entirety and when considering the totality of the circumstances, this Court agrees with the Bankruptcy Court's finding that there is no evidence in the record of Debtor's fraudulent intent.

NTA alleges that Debtor solicited deposits from customers with the knowledge that

Great Connections was in financial difficulty. (Docket 7, p. 11). The record is clear and undisputed that Debtor knew that the business was in difficulty at the time she solicited moneys from customers. However the lower court ruled that there was no evidence in the record to indicate that this solicitation was a fraudulent act. (Final Order, p. 4). Rather the court found the record replete with evidence to support Debtor's claim that the solicitations were affirmative steps to try and save Great Connections. *Id.* Amid the financial difficulties, Debtor attempted to keep her business operating by: (1) soliciting a financial partner in Thomas Chimera; (2) cutting staff; (3) drawing upon the corporation's line of credit; and (4) infusing the corporation with her own personal savings and salary reductions. *Id.*

No evidence has been presented to show that Debtor was personally enriched through the solicitations. No evidence has been presented to indicate that Debtor was siphoning corporate moneys for personal use. There is no evidence in the record to show any type of personal benefit that Debtor gained at the expense of customers. The lower court viewed the Debtor's efforts to save her company as bad business judgments, not fraud. (Final Order p. 5). This Court finds that there is no evidence in the record to indicate otherwise.

NTA further alleges that the Debtor fraudulently deposited customer moneys into a general account from which her own personal expenses were paid. (Docket 7, p. 11). Yet Appellant fails to accurately refer this Court to an appropriate record cite supporting that claim. This Court notes one reference to personal expenses paid from the general corporate account in the deposition of Mildred Denick, January 28, 1993 (p. 35, ¶¶ 4–24). The personal expenses were never identified in the record to be those of the Debtor, and were referenced in the testimony of Jeff Fox during the evidentiary hearing dated February 7, 1996. In his trial testimony. Fox stated that the personal expenses were in the form of a loan to repair his car which he used for Great Connections' business. (Trial Testimony of Jeff Fox B.R. Docket No. 128 p. 60, ¶¶ 9–23, p. 61, ¶¶ 4–22).

Fox also testified that he repaid the loan with interest through paycheck deductions. *Id.* at ¶¶ 12–13.

The lower court found no evidence in the record to show corporate payment of the Debtor's personal expenses. This Court likewise finds the record devoid of any such evidence.

Further, the lower court did not find fraudulent intent in Debtor's commingling of corporate moneys in the general account. Appellant NTA fails to show that general trade practices require or suggest segregation of funds. There is no evidence in the record of Debtor's holding out to customers that funds were segregated. There is no evidence in the record that customers relied on an established business practice within the tour industry of segregated funds. This Court therefore agrees with the lower court that NTA has failed to support the claim that the commingling of funds was a fraudulent practice. Appellant NTA asserts that Debtor "pushed for collection" of customer moneys prior to the filing of the bankruptcy petition. (Docket 7, p. 11) However the record clearly indicates and the lower court so noted that Debtor's decision to file the corporate Chapter 11 bankruptcy was "conceived at the last minute as an ill-fated attempt to preserve the corporation's airline ticketing plates" that were being pulled by the Airline Reporting Corporation. (Final Order p. 4). Debtor's prepetition conduct does not reflect a series of activities associated with the Debtor's gain at the consumers' expense. There is no evidence in the record to indicate a systematic or organized scheme to cancel tours or prevent refunds. There is no evidence in the record to indicate Debtor's misrepresentations to customers.

Therefore, this Court affirms the lower court's finding that Appellant simply has not met its burden of proving a *prima facie* case of Debtor's intent to defraud under § 523(a)(2)(A).

**II. The Bankruptcy Court Did Not Err In Finding That Debtor's Actions Did Not Rise to the Level of Conversion under § 523(a)(6).**

Pursuant to 11 U.S.C. § 523(a)(6), discharge of a debt is prohibited for "willful

and malicious injury by the debtor to another entity or to the property of another entity". An act is considered "willful" if it is deliberate, malicious, and done without just cause. *Deere Credit Services, Inc. v. Thomas,* 116 B.R. 287, 290 (Bankr.S.D.Fla.1990). An injurious act is "willful" if it is an intentional breach of duty. *T.R.C., Inc. v. English,* 122 B.R. 799, 803 (Bankr.S.D.Fla.1990). The Eleventh Circuit has held that constructive or implied malice is sufficient to establish malice within the meaning of § 523(a)(6). *Chrysler Credit Corp. v. Rebhan,* 842 F.2d 1257, 1263 (11th Cir.1988).

 Appellant argues that Debtor Rodriguez was "at all times acting as an *agent* for her customers to hold these monies *on their behalf.*" (Docket 7, p. 13). Therefore, Appellant claims that Debtor converted consumers' property by using it to pay for Debtor's own expenses. (Docket 11, p. 9). NTA alleges that the evidence is "clear" that Debtor "made or caused to be made representations to her customers that the funds they gave her were 'deposits' as distinguished from 'payments,' [and] that the funds [were] subject to full refund and return upon cancellation of the tour." (Docket 7, p. 13). The lower court found no supporting evidence for this claim. This Court agrees.

The Bankruptcy Court found no evidence to support the claim that Debtor held out to customers that Great Connections was merely a custodian or bailee for customers' funds and that the funds remained the customers' property. This Court agrees. As previously mentioned, there is no evidence in the record that Debtor made assurances to customers that funds were segregated and/or that funds did not become Great Connections' property.

Appellant NTA failed to provide evidence that Debtor's conduct was without just cause. After viewing all of the evidence, the Bankruptcy Court found Debtor's actions indicative of her attempt to save her business— indeed a just cause. While Debtor's acts were perceived by the Bankruptcy Court to be illogical and even bad business decisions, they were not viewed as rising to the level of conversion under bankruptcy law so as to satisfy the requirements of § 523(a)(6). This Court likewise has reviewed all of the evidence and testimony, and finds no evidence to challenge the lower court's finding.

## III. The Bankruptcy Court Did Not Err In Dismissing NTA'S Claim Under § 523(a)(4).

 In the Order dated August 25, 1994, the Bankruptcy Court held that, because NTA did not present evidence showing it acted as a fiduciary, there could be no recovery under 11 U.S.C. § 523(a)(4). Appellant NTA argues that the lower court failed to consider that a claim of embezzlement under § 523(a)(4) is separate and distinct from a claim of fraud while acting as a fiduciary. (Docket 7, p. 15). Appellant refers to *Hall v. Johann,* 125 B.R. 679 (Bankr.M.D.Fla.1991) which held that embezzlement does not require a finding of the debtor's fiduciary capacity. Debtor agrees that the lower court's ruling may be technically incorrect in that embezzlement under § 523(a)(4) does not require a fiduciary relationship. This Court also agrees that a claim for embezzlement under § 523(a)(4) does not require the finding of a fiduciary relationship and, on this point, the Bankruptcy Court was in error.

Appellant NTA correctly states that fraudulent intent is a necessary element of an embezzlement claim. *Rishell v. Davis,* 115 B.R. 346, 351 (Bankr.N.D.Fla.1990). As previously discussed. Appellant has failed to provide evidence of fraudulent intent in the case at bar. Therefore, while the lower court erred in requiring an evidentiary showing of a fiduciary relationship for embezzlement under § 523(a)(4), the error was harmless and does not effect the posture of the case at bar.

 Finally, Appellant NTA makes a preliminary argument that the Bankruptcy Court erred in finding that Debtor was not liable as the alter-ego of Great Connections. NTA refers to the deposition testimonies of Great Connection's bookkeepers, Connie Fox Philebaum and Mildred Denick, as evidence that clearly establishes Debtor Rodriguez as a "central figure" of Great Connections. NTA cites *In re Firestone,* 26 B.R. 706, 714 (Bankr.S.D.Fla.1982) as persuasive authority to establish that, as a "central figure", sole owner, and shareholder of the Great Connec-

tions corporation, Debtor Rodriguez is not shielded by the corporate form from liability for a tort, including fraud, in which she is involved.

This Court agrees that the piercing of the corporate veil is unnecessary to deny the discharge of a "central figure's" fraudulent debt in bankruptcy. In reviewing all of the witnesses' testimony including the depositions and trial testimonies of: Lauren Berns, Sandra Rodriguez, Mildred Denick, Connie Fox Philebaum, Thomas Chimera, June Sage, Jeff Fox, John Barnhart, Jr., and Robert Livesay, this Court finds that Debtor Rodriguez was indeed a "central figure" of Great Connections. However this Court notes the lower court's finding that distinguished the case at bar from *In re Firestone.* In *Firestone,* the principal operated as an active participant in fraudulent acts. (Final Order p. 6 n. 1) (quoting *In re Firestone* ). In the case at bar, the lower court found a lack of evidence to show the Debtor engaging in fraudulent acts. *Id.* This Court agrees with the lower court that there has not been sufficient evidence presented to show that Debtor's actions were fraudulent. Therefore, in the case at bar, the issue of a corporate "central figure" 's liability for fraudulent acts under § 523(a)(2)(A) is moot.

### CONCLUSION

This Court has reviewed over 1,206 pages of depositions and courtroom testimony, and over 2,060 pages of Great Connections' customers' claims. Of the 515 claims (many assigned to NTA) presented as Appellant's exhibit 3, approximately 45 claims involved moneys collected within the 30 day period prior to the December 11, 1991, petition for bankruptcy. While each customer claim has been individually heard by this Court, the evidence does not show a pattern of Debtor "pushing for collections" on the eve of bankruptcy. The evidence does not show that Debtor's personal expenses were paid from customers' funds. There is no evidence in the record of fraudulent documents, falsified records, fictitious loans or transfers in and out to various parties, or of the Debtor's personal gain at the expense of Great Connections' customers.

Clearly, Great Connections' customers suffered losses because of Debtor's bad business judgment. Several customers attached personal letters to their claims and, because these letters were introduced into evidence, this Court gave them consideration. The Court empathizes with the customers who suffered losses as a result of the failure of Great Connections. However the losses do not in and of themselves indicate Debtor's fraudulent intent. The evidence shows Debtor's comedy of errors including bad judgment, wishful thinking, and poor business management. Yet these acts do not rise to the level of fraudulent intent.

This Court therefore finds that the Bankruptcy Court did not err with regard to its finding that there was insufficient evidence to show fraudulent intent under § 523(a)(2)(A), § 523(a)(6), and § 523(a)(4). While the Bankruptcy Court erred in finding that a fiduciary relationship must be established for embezzlement under § 523(a)(4), this error was harmless. Accordingly, it is,

**ORDERED** and **ADJUDGED** that the Final Order of the United States Bankruptcy Court for the Middle District of Florida be **AFFIRMED** and the Clerk of Court **shall** enter judgment accordingly.