John K. Olson, Judge
THIS ADVERSARY PROCEEDING came before the Court on June 6, 2018 at 1:30 p.m. upon the Federal Trade Commission's ("FTC" or "Plaintiff") Motion for Summary Judgment [ECF 53]. The Plaintiff's Complaint [ECF 1] sought a determination that judgment debt in favor of the FTC in the amount of $ 2,825,761.28 was excepted from discharge for false pretenses pursuant to 11 U.S.C. § 523(a)(2)(A). Mr. Michael Robert Ettus ("Defendant" or "Ettus") denied these propositions of fraud [ECF 5].
The Plaintiff's Motion for Summary Judgment [ECF 53] asks this Court to "enter an order finding the FTC's Judgment against Ettus in the amount of $ 2,825,761.28 (plus post-judgment interest) is excepted from discharge" [ECF 53]. Defendant has denied these allegations in his response to Plaintiff's Motion for Summary Judgment, asserting that he did not "intend" to defraud consumers [ECF 62]. The only issue before the Court is whether or not Defendant intended to deceive his *408 customers when he failed to disclose material information to the Florida Department of Agriculture and Consumer Service ("DOACS"), wrote scripts to be used to entice customers which included information he knew to be false, required an illegal upfront fee, and received numerous complaints from customers about not obtaining the promised results. Upon further consideration and after hearing argument from both parties, Plaintiff's Motion for Summary Judgment [ECF 53] is GRANTED .
PROCEDURAL HISTORY
In November, 2014, the FTC sued Ettus and his company, Consumer Collections Advocates ("CCA") in the Southern District of Florida, alleging that they defrauded customers in a telemarketing investment recovery scam (the "Enforcement Action"). FTC v. Consumer Collections Advocates Corp. and Michael Robert Ettus , Case No. 0:14-cv-62491-BB, 2015 WL 3767359 (S.D. Fla.). The District Court granted Summary Judgment in favor of the FTC, and found Ettus personally liable in the amount of $ 2,825,761.28 [ECF 44, p. 2-3]. However, the District Court specifically noted that the FTC was not required to establish intent to find Ettus personally liable [ECF 44, p. 9]. Ettus appealed the District Court's decision solely on whether he should be held personally liable. The Eleventh Circuit affirmed, stating that because he "participated directly in, and had authority to control CCA's deceptive practices and that he had some knowledge of those deceptive practices," the District Court did not err in finding Ettus personally liable. FTC v. Consumer Collection Advocates Corp. , 668 Fed. App'x. 357, 358 (11th Cir. 2016).
In 2016, Ettus filed a voluntary Chapter 7 petition (16-19239-JKO), which commenced his bankruptcy case. FTC filed a complaint (16-01473-JKO) disputing the dischargeability of the $ 2,825,761.28 judgment pursuant to 11 U.S.C. § 523(a)(2)(A) [ECF 1] ("Plaintiff's Complaint"). The Plaintiff filed an initial Motion for Summary Judgment [ECF 8] alleging that Defendant obtained the money by false pretenses, false representations, or actual fraud pursuant to 11 U.S.C. § 523(a)(2)(A) (Count I) and that the Enforcement Action against the Defendant prevented the Ettus from re-litigating the case based on the Doctrine of Collateral Estoppel (Count II). The Bankruptcy Court granted Summary Judgment in favor of the Plaintiff, and the judgment against the Defendant in the amount of $ 2,825,761.28 was found non-dischargeable under 11 U.S.C. § 523(a)(2)(A) ("First Summary Judgment") [ECF 28].
Ettus appealed the First Summary Judgment to the District Court [ECF 30] on the sole issue of "intent." On appeal (Case No.: 1:17-cv-60492), the District Court found "the bankruptcy court's application of collateral estoppel was [in] error" because the Enforcement Action did not analyze Ettus' intent to deceive [ECF 43, p. 7]. The District Court further stated that "[t]he bankruptcy court's brief statement of reasoning does not make clear whether the bankruptcy court concluded, solely on the basis of collateral estoppel [...], or whether it considered the competing evidence and found no material issue of fact about Ettus's intent" [ECF 43, p. 8]. The District Court reversed the Bankruptcy Court's ruling on the First Summary Judgment and remanded the case for "further adjudication" on the sole element of intent. [ECF 43, p. 9].
UNDISPUTED RELEVANT FACTUAL BACKGROUND
Ettus was a veteran telemarketer, who first obtained his Florida telemarketing license in 2008, and managed, owned, or *409 worked in at least six (6) different companies involved in marketing or reselling timeshares [ECF 54, ¶ 1]. Ettus was aware of the kinds of deceptive practices that forced telemarketing companies out of business and admitted that one of the companies he was employed at, Timeshare Marketing Pro, was the subject of an FTC action [ECF 54, ¶ 4]. Timeshare Marketing Pro was shut down by the FTC in October 2010 because it made false representations to consumers FTC v. Timeshare Mega Media & Marketing Group, Inc., et al. , Civ. No. 10-cv-62000-WJZ (S.D. Fla. 2010). Additionally, the previous six telemarketing companies at which Ettus was employed along with the companies that he owned or managed were the subject of numerous consumer complaints [ECF 54, ¶ 1].
Defendant was president of the solely-owned company, CCA, which was a telemarketing program originally designed to recover money consumers lost in telemarketing scams [ECF 54, ¶ 8].[1] When obtaining his telemarketing license for CCA, Ettus failed to disclose his previous association with businesses that engaged in deceptive activities [ECF 54, ¶ 6]. Moreover, Ettus falsely stated on the license application to the DOACS that he did not provide sales information or marketing materials to his telemarketers (Question 12), and that the telemarketers did not use sales scripts (Question 11) [ECF 54, ¶ 14]. In fact, Ettus used scripts, contracts, and verification scripts from his previous business and submitted these scripts to DOACS to obtain his license [ECF 54, ¶¶ 12-13]. Ettus admitted to creating these scripts and was responsible for the finished sales scripts and placed the scripts on every telemarketer's desk in the CCA premises [ECF 54, ¶¶ 17-18, 19]. Ettus claims that he believed he and CCA were complying with the relevant laws, and that by licensing himself and his telemarketers, his scripts had been inherently or impliedly approved by the Florida DOACS [ECF 62, ¶ 2]. The CCA telemarketers were to rely on the scripts that Ettus prepared when making calls to consumers [ECF 54, ¶ 19].
The telemarketers contacted consumers, mostly seniors and retirees, to pitch CCA's ability to collect funds that the consumers had lost in fraudulent telemarketing schemes [ECF 54, ¶ 30-31]. CCA claimed to be able to recover lost funds within 30 to 180 days and promised consumers that they were highly likely to recover a substantial portion of their funds, triple civil penalties, or a refund of their original fee [ECF54, ¶¶ 44, 45, 46, 62(f) ]. CCA implored consumers to retain its services quickly, claiming that consumers would not be able to recover funds without them and that time was of the essence [ECF 54, ¶¶ 47-48, 62(h) ]. To begin the process, CCA telemarketers required that consumers pay an up-front or retainer fee, which ranged anywhere from several hundred to fifteen thousand dollars, in addition to a post-retrieval 10-20% commission of recovered funds [ECF 54, ¶¶ 32-33, 62(e) ].
Ettus admitted to knowing that these up-front fees were illegal at least as early as the end of 2013, however, he continued to collect the retainer until CCA was shut down in late 2014 [ECF 54, ¶ 32]. CCA also represented to consumers that it would utilize legal actions and remedies to recover funds even though it neither offered legal services, nor engaged in legal action on behalf of the consumers [ECF 54, ¶¶ 38-41, 62(d) ].
*410 Once a consumer agreed to retain CCA services and paid the upfront fee, communications would essentially cease [ECF 54, ¶¶ 55, 62(j) ]. Consumers had difficulty contacting representatives from CCA and were always met with excuses as to why recovery was taking longer than expected [ECF 54, ¶¶ 55, 62(k) ]. Some frustrated consumers filed complaints with the Better Business Bureau ("BBB"), the FTC, and the U.S. Commodities Future Trading Commission. [ECF 54, ¶¶ 56, 62(l) ]. Ettus was aware that numerous consumer complaints were often indicative of deceptive business practices and led to companies being shut down [ECF 54, ¶ 25]. Often, Ettus on behalf of the CCA, would contact consumers requesting that they retract their complaints and offer to refund the initial fee or make further reassurances regarding the recovery [ECF 54, ¶¶ 26,28, 62(l) ]. Other times, Ettus explained away customer complaints to the BBB by falsely attributing them to disgruntled ex-employees and agencies in competition with CCA [ECF 54, ¶ 25].
Most of the consumers were unable to recover the funds after years of promise [ECF 54, ¶¶ 57, 62(m) ]. CCA was able to recover funds in a few cases such as in Hunter Wise[2] and APM,[3] however even those recoveries were significantly less than promised [ECF 54, ¶¶ 59, 62(m) ].
SUMMARY JUDGMENT STANDARD
Federal Rule of Civil Procedure 56(c) made applicable to this adversary proceeding by Federal Rule of Bankruptcy Procedure 7056, provides that "[t]he court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a) ; see also Celotex Corp v. Catrett , 477 U.S. 317, 323, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986). The movant bears the burden of establishing that there is an absence of any genuine issue of material fact and that, by a prima facie showing, it is entitled to judgment as a matter of law. See Celotex , 477 U.S. at 323-24, 106 S.Ct. 2548. "An issue of fact is 'material' if it is a legal element of the claim under the applicable substantive law which might affect the outcome of the case." Allen v. Tyson Foods , 121 F.3d 642, 646 (11th Cir. 1997). "It is 'genuine' if the record taken as a whole could lead a rational trier of fact to find for the nonmoving party." Anderson v. Liberty Lobby, Inc. , 477 U.S. 242, 248, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986). Once the movant has made a prima facie showing of its right to judgment as a matter of law, the nonmoving party must go beyond the pleadings and demonstrate that there is a material issue of fact which precludes summary judgment. See Celotex , 477 U.S. at 323, 106 S.Ct. 2548. To defeat the motion for summary judgment, the nonmoving party must "demonstrate that there is more than a scintilla of evidence in support of his position." In re E.S. Bankset, L.C. , 2006 WL 3922112 at *2 (Bankr. S.D. Fla. 2006).
DISCUSSION
11 U.S.C. § 523(a)(2)(A)
The Bankruptcy Code is meant to offer relief to the honest, but unfortunate debtor.[4] Thus, 11 U.S.C § 523 of the U.S. Bankruptcy Code provides:
*411 (a) A discharge under section 727 [...] of this title does not discharge an individual debtor from any debt -
(2) For money, property, services, or an extension, renewal, or refinancing of credit, to the extent obtained by
(A) False pretenses, a false representation, or actual fraud, other than a statement respecting the debtor's or an insider's financial condition.[5]
To establish a claim under § 523(a)(2)(A), a party must "show the traditional elements of common law fraud: (1) the debtor made a false representation with the intent to deceive the [party]; (2) the debtor knew that the representation was false at the time that it was made; (3) the [party] relied on the misrepresentation; (4) the reliance was justified; and (5) the [party] sustained a loss as a result of the misrepresentation." In re Ortiz , 2014 WL 4589868 at *3 (Bankr. N.D. Ga. 2014) (emphasis added). The sole element that is in contention here is intent .
Standard for Intent
A defendant is found to have the requisite intent pursuant to 11 U.S.C. § 523(a)(2)(A) when (1) a party knowingly makes a deceptive statement or provides a third party with means to make a deceptive statement;[6] (2) actively and knowingly participates in a fraudulent scheme;[7] (3) actively and knowingly participates and knowingly participates in and orchestrates a fraudulent scheme;[8] or (4) recklessly disregards deceptive statements made by his agents.[9] A defendant's "[f]raudulent intent need not be shown by direct evidence, but may be inferred from the totality of the circumstances." Lyons v. Wiggins (In re Wiggins) , 250 B.R. 131, 134 (Bankr. M.D. Fla. 2000) ; see also Nat'l Tour Ass'n, Inc. v. Rodriguez , 221 B.R. 1012, 1015 (M.D. Fla. 1998). An analysis determining fraudulent intent often looks to the overall demeanor and credibility of the debtor. In re Burgess , 955 F.2d 134, 137 (1st Cir. 1992) (citing Williamson v. Fireman's Fund Ins. Co. , 828 F.2d 249, 252 (4th Cir. 1987) ) ("a determination concerning fraudulent intent depends largely upon an assessment of the credibility and demeanor of the debtor"). Summary judgment for intent pursuant to 11 U.S.C. § 523(a)(2)(A) is proper when "the record of the case leaves no plausible honest explanation for the debtor's action." In re Laskey , 441 B.R. 853, 856 (Bankr. N.D. Ohio 2010).
Under a Totality of the Circumstances, The Record of the Case Leaves No Honest Plausible Explanation for Defendant's Actions
Upon consideration of the actions taken by CCA and Ettus, there is no other plausible honest explanation for Ettus' failure to disclose material information to the DOACS, knowing inclusion of false information in sales scripts, requirement of an upfront retainer fee, and attempts to dispose of numerous consumer complaints. Under a totality of the circumstances, it is clear that Ettus intended to defraud CCA consumers because he actively and knowingly participated in a fraudulent scheme, induced consumers to retain CCA services *412 under false pretenses, and recklessly disregarded deceptive statements made by his telemarketers.
A. Ettus was Long Acquainted with Telemarketing Practices and Actively and Knowingly Participated in a Fraudulent Scheme by Requiring Customers to Pay an Up-Front Charge He Knew was Illegal .
Intent to deceive can be inferred where there is a pattern of misrepresentation, there are similar statements made to multiple parties, there is persistence in continuing deceit, and there is an absence of disclaimers by sales people regardless of complaints from other prior sales to consumers. See Firestone , 26 B.R. at 717. Ettus' foray into a continuing pattern of misrepresentation began from the time he applied for his telemarketer license. In his application, he failed to disclose his association with previous businesses that were shut down by the FTC for deceptive practices. At least one of the companies he worked for, Timeshare Marketing Pro, was shut down by the FTC and almost all of the other businesses he worked for were subject to numerous complaints by consumers. This failure to disclose information allowed him to obtain his license under false pretenses.
Ettus continued this pattern of misrepresentation by charging CCA customers an illegal retainer fee. As a "veteran" telemarketer, Ettus was, or should have been, well aware that requiring an upfront retainer fee was illegal. In fact, he admitted to knowing that it was illegal in late 2013. However, he continued to illegally charge the retainer fee until the FTC finally shut down CCA in November 2014.
As a practiced telemarketer in the industry, Ettus knew that multiple consumer complaints often indicated deceptive business practices. CCA received multiple complaints from consumers ranging from their frustration at CCA's lack of communication once the retainer fee was paid to not receiving their promised recovery. As with Firestone , Ettus' telemarketers failed to provide any disclaimers to consumers, even though there were multiple complaints from prior sales. Moreover, rather than remedy the complaints by addressing the concerns of the consumers, Ettus attempted to bribe consumers into retracting their statements by offering to return their retainer fee, offering more false assurances of recovery, or by attributing complaints to disgruntled employees. In one instance, he contacted Hunter Wise, a CCA consumer, in an effort to have it remove a warning on its website. By trying to cover up consumer complaints, Ettus' actions prove that he was engaged in a continuing practice of misrepresentation and attempted to persist in defrauding his clients.
Ettus states that he did not intend to defraud or mislead CCA customers because "at all material times, [he], CCA, and all of its employees were licensed by the [Florida DOACS]" [ECF 62, p. 7]. Additionally, he states that by submitting the sales scripts to the DOACS before obtaining his license, he assumed that these scripts would be approved and could not be considered illegal. However, "intent may be inferred despite a debtor's avowal to the contrary." Wollman v. Gessler (In re Gessler) , 11 B.R. 489 (Bankr. W.D. Wis. 1981). Although the Florida DOACS apparently overlooked Ettus' deceptive scripts when granting his telemarketing license, that state inaction does not excuse his deception as a business owner. As a "veteran" telemarketer who was licensed in 2008, Ettus was, or should have been, well aware of the expectations and laws of his industry. Just because the DOACS failed to object to the illegality of the *413 document, such inaction does not make the document automatically legal for the defendant to use. As the sole owner and officer of CCA, he is responsible for any major legal specifications required in the industry. He was expected to know the laws and to follow them. It is not the burden of the DOACS to ensure that every script comport with the requirements of the industry.
B. Ettus Knowingly Induced Customers to Retain CCA Services by Including False Information in Sales Scripts and by Providing his Telemarketers with the Means to Make False Representations to Consumers .
A debtor who makes a false representation knowing it is untrue, is presumed to have the intent to deceive because "[d]ebtors in bankruptcy are presumed to intend the natural consequences of their acts." Seaborne , 106 B.R. at 714 (citing Standard Charter Bank v. Klepach (Matter of Bonanza Import & Export, Inc.) , 43 B.R. 570 (Bankr. S.D. Fla. 1984). During his deposition in the original case, Ettus admitted to writing the sales scripts, which the telemarketers were to rely on when making the phone calls, and to placing the scripts on the desks of every telemarketer in the CCA premises. FTC v. Consumer Collections Advocates Corp. and Michael Robert Ettus , Case No. 0:14-cv-62491-BB, 2015 WL 3767359 (S.D. Fla.). Ettus made sure to include language in his scripts that led consumers to believe CCA provided legal services [ECF 54, ¶ 38 ("Should you want to take the proper steps to get your money back ... we will talk about retaining our legal services") ]. However, Ettus later admitted that he was not a lawyer and CCA did not provide legal services.
In this case, Ettus knew that CCA was unable to provide legal services, yet falsely represented to his consumers that they would be able to take advantage of CCA's legal aid if they paid CCA's upfront fee and retained CCA's services. Ettus is presumed to have known that consumers would rely upon that information when retaining CCA's services, and thus is presumed to have the intent to deceive his customers.
C. Ettus Recklessly Disregarded the Deceptive Statements his Telemarketers Made Regarding CCA's Ability to Recover Funds and Provide Legal Services .
As stated above, Ettus created the final scripts and provided them to all of his employees. The telemarketers were expected to and did rely on the scripts provided by Ettus. Even if Ettus believed that the actions taken by the Telemarketers were legal at the time the scripts were created, he received numerous complaints as evidence to the contrary. Consumers complained multiple times of not receiving the "guaranteed" recovery within the promised time period and being unable to contact CCA employees once they had paid the retainer fee. Ettus knew of the telemarketers' practices because not only did he create the deceptive scripts they used, but he also admitted to routinely standing next to the telemarketers and listening to the calls they made to the consumers. He also admitted that he knew the telemarketers were making "exaggerated and misleading claims in selling CCA's recovery services" [ECF 53, p. 12]. Additionally, Ettus was well aware of why the consumers were complaining, often responding to these complaints himself. Ettus disregarded the substance of the complaints, and instead of correcting the practices of his telemarketers, sought to explain away the complaints. He recklessly allowed his telemarketers to continue their deceptive *414 practices until the FTC stopped them from doing so.
CONCLUSION
Although Ettus does not admit that he intended to deceive his consumers, precedent does not require direct evidence of fraudulent intent, but allows intent to be inferred under a totality of the circumstances. Lyons , 250 B.R. at 134. Thus, upon consideration of the Defendant's actions, the Court finds that the Defendant's continued deceptive practices under a totality of the circumstances are more indicative of his intent than his statements and denials to the contrary. Accordingly, it is hereby ORDERED that:
1. The Motion for Summary Judgment [ECF 53] is GRANTED . The court finds that the Defendant had the requisite intent such that his debt to the FTC is nondischargeable under 11 U.S.C. § 523(a)(2)(A).
2. The judgment against Defendant Michael Robert Ettus is entered in the case styled as FTC v. Consumer Collections Advocates Corp. and Michael Robert Ettus , Case No. 0:14-cv-62491-BB, 2015 WL 3767359 (S.D. Fla.) in the amount of $ 2,825,761.28 is nondischargeable debt arising from false representation, false pretense, or actual fraud under 11 U.S.C. § 523(a)(2)(A).
3. A separate final judgment will be entered.
SO ORDERED.
ORDER DENYING MOTION FOR RECONSIDERATION [ECF 80]
This Adversary Proceeding is before the Court on the Motion for Reconsideration [ECF 80] (the "Motion") filed by Defendant Michael Robert Ettus seeking reconsideration of this Court's Order [ECF 73] (the "Order") Granting Plaintiff's Motion for Summary Judgment [ECF 53], and the separate Final Judgment [ECF 74] (the "Final Judgement"), which determined that a judgment debt owed by Defendant to Plaintiff entered in the case styled FTC v. Consumer Collections Advocates Corp. and Michael Robert Ettus , Case No. 0:14-cv-62491-BB (S.D. Fla.) in the amount of $2,825,761.28 is a nondischargeable debt arising from false representation, false pretense, or actual fraud under 11 U.S.C. § 523(a)(2)(A). For the reasons set forth below, the Motion is denied.
The Order and Final Judgment were entered August 2, 2018. The Motion was filed August 16, 2018. It is accordingly governed by Federal Rule of Bankruptcy Procedure 9023, applying the standards of a Federal Rule of Civil Procedure 59(e) motion to alter or amend the judgment, rather than a Rule 60 motion for relief from the judgment.[1] Mays v. U.S. Postal Service , 122 F.3d 43, 46 (11th Cir. 1997).
A Rule 59(e) motion may be granted only if the movant can establish the existence of "newly-discovered evidence or manifest errors of law or fact." Jacobs v. Tempur-Pedic Int'l, Inc. , 626 F.3d 1327, 1344 (11th Cir. 2010) (emphasis in original, quotations and citations omitted). A movant cannot use a Rule 59(e) motion "to relitigate old matters, raise argument or present evidence that could have been raised prior to the entry of judgment." Id. And yet that which the Eleventh Circuit has instructed is prohibited under a Rule 59(e) motion is precisely what Defendant does here: he merely repeats arguments *415 and evidence from his Opposition [ECF 62] to summary judgment, or makes arguments and presents evidence that he could have raised prior to the entry of the Order and Final Judgment.
Because the Defendant has not satisfied his burden under Rule 59(e), the Motion must be, and hereby is, DENIED .
SO ORDERED.
ORDERED in the Southern District of Florida on October 25, 2018.

One presumes that victims of prior telemarketing scams are a target-rich customer base for further telemarketing scams.

Commodity Futures Trading Commission v. Hunter Wise Commodities, LLC, et al. , Case No. 12-81311-CIV-MIDDLEBROOKS (S.D. Fla. 2012).

FTC v. American Precious Metals, LLC , No. 0:11-cv-61072-WJZ (S.D. Fla. 2012).

Grogan v. Garner , 498 U.S. 279, 286-87, 111 S.Ct. 654, 112 L.Ed.2d 755 (1991).

11 U.S.C. § 523(a)(2)(A)

See In re Seaborne , 106 B.R. 711, 714 (Bankr. M.D. Fla. 1989).

See In re Firestone , 26 B.R. 706, 714-15 (Bankr. S.D. Fla. 1982).

See Lioce v. Heinz , 501 B.R. 746, 760-61 (Bankr. N.D. Ala. 2013).

See Blackmon v. Evans , 410 B.R. 317, 321 (Bankr. M.D. Fla. 2009) ; see also Birmingham Tr. Nat. Bank v. Case , 755 F.2d 1474, 1476 (11th Cir. 1985).

Federal Rule of Civil Procedure 60 is applicable pursuant to Federal Rule of Bankruptcy Procedure 9024.